ESTATE OF DANIEL GUGGENHEIM, DECEASED, FLORENCE GUGGENHEIM, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 77675. Promulgated June 30, 1939.

*M. B. Angell, Esq., Weston Vernon, Jr., Esq., Paul Barringer, Esq.,* and *Henry Breckenridge, Esq.,* for the petitioner.

*Chester A. Gwinn, Esq., E. G. Sievers, Esq.,* and *Charles E. Lowery, Esq.,* for the respondent.

### SUPPLEMENTAL OPINION.

MELLOTT: Opinion was duly promulgated herein February 2, 1939, and published as report No. 38 in Volume 39 B. T. A., but decision thereon has not been entered. On May 2, 1939, petitioner filed a motion, consented to by respondent, asking that the proceeding be reopened "for the sole purpose of receiving and admitting in evidence and making a part of the record and report herein, a stipulation of fact entered into between the parties" pertaining to the value of the corpus of the trust established by the decedent during his lifetime and discussed in the opinion under Issue VI. The motion was granted and the stipulation was ordered filed. Briefly it states that the substantial difference between the value at the time of the decedent's death of the property in the hands of the trustee on February 14, 1922, when the settlor relinquished his power of revocation, and the value of the property in the hands of the trustee on the date of the settlor's death was attributable wholly to "transactions by the trustee for and on behalf of the trust, entered into after February 14, 1922, the major part of which were capital transactions."

In view of the facts presently stipulated the following question must now be answered: Which of the three stipulated values of the corpus of the trust should be included in decedent's gross estate— (1) $990,609, the value on the date of the death of the decedent of the securities delivered to the trustee upon the execution of the revocable trust on May 28, 1918; (2) $996,588.89, the value on the date of the death of the decedent of the property in the hands of the trustee on February 14, 1922, when the decedent relinquished his power of revocation; or (3) $2,289,450.62, plus $705, the value of 75

shares of Anglo-Chilean stock, which aggregate amount was the value, on the date of the decedent's death, of all the property then comprising the corpus of the trust?

In the opinion promulgated herein on February 2, 1939, it was pointed out that the decedent had retained the power (in the language of the trust instrument) "to alter, define and prescribe the relative interests of the beneficiaries in the trust fund, or the income thereof, their respective shares in the same, their respective powers with respect to such shares, and the time and manner of making distribution * * * together with the power of causing a final distribution to be made at any time to or among the beneficiaries or any of them and so terminating the trust." This, we held, gave the decedent such substantial control over the trust property that he, like the settlor in *Porter* v. *Commissioner*, 288 U. S. 436, remained "dominant in respect of other distributions of both corpus and income", his death terminating the retained control and ending the possibility of any change being made by him. Being of the opinion that his death was "the source of valuable assurance passing from the dead to the living" and that it was "the event on which Congress based the inclusion" of the property so transferred in his gross estate, we held that the value of the corpus of the trust must be included in his gross estate under section 302 (d) of the Revenue Act of 1926.

Petitioner contends that the maximum amount which may be included is the value, at the date of death, of the property in the hands of the trustee when the decedent, on February 14, 1922, relinquished his power of revocation. This contention seems to us to be unsound. The trustees, as they had a right to do under the trust instrument, sold some of the securities comprising the corpus of the trust estate subsequent to February 14, 1922, for an amount in excess of their value when transferred to the trust and in excess of their value when the decedent relinquished his power of revocation. If we are correct in holding, as we have held, that the decedent, notwithstanding the relinquishment of his power of revocation, had retained such substantial control over the trust estate that its termination with his death was "the source of valuable assurance passing from the dead to the living" and "the event" requiring inclusion in gross estate, then it seems logical to conclude that all of the property in the trust estate, including the capital gains derived from sales and invested in other securities, should also be included. The decedent had the same degree of control over the proceeds derived from the sales that he had over the property transferred and he lost none of it merely because the proceeds were invested in other property.

Petitioner contends that the facts in the instant proceeding present the precise situation which the Supreme Court had in mind when it

stated, in *Nichols* v. *Coolidge*, 274 U. S. 531: "* * * Property of small value transferred before death may have become immensely valuable and the estate tax, swollen by this, may leave nothing for distribution." We do not agree with this contention. The sentence immediately preceding the quotation shows that the Court had in mind "past lawful transactions, not testamentary in character and beyond recall." Here, however, as we have pointed out, the enjoyment of the property was subject, at the date of the death of the decedent, to "change through the exercise of a power * * * to alter, amend or revoke." There is, therefore, a substantial difference between the situation here and that which the Court had in mind when it used the language quoted.

*Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, also cited by petitioner, likewise fails to support petitioner's present contention. In that case the Court, while affirming the judgment of the lower courts holding that the *corpora* of five trusts should not be included in gross estate because the power to alter or revoke was dependent upon the consent of one having an adverse interest, reversed as to the other two trusts, holding "that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death." (See also *Chase National Bank* v. *United States*, 278 U. S. 327.) For that reason the Court refused to apply the rule earlier enunciated by it in *Nichols* v. *Coolidge, supra.*

While the precise question we are now considering seems never to have been passed upon by the Supreme Court, it was considered and decided by the Circuit Court of Appeals for the Fourth Circuit in *Holderness* v. *Commissioner*, 86 Fed. (2d) 137, affirming 33 B. T. A. 155. Cf. *Stewart W. Bowers, Trustee*, 34 B. T. A. 597. In the *Holderness* case the decedent in 1926 created an irrevocable trust, depositing with the trustee the sum of $1,364,000, with directions to invest it in income producing securities. She reserved the right to change "the proportions of such estate that shall go to any of the parties named or specified herein." At the time of her death in 1929 the property had a fair market value of $2,301,070.04, all of which was held to be includible in gross estate. This conclusion, we think was correct; for, as the Supreme Court stated in *Porter* v. *Commissioner, supra*, "* * * So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable." In other words, if the reservation by a transferor of the power of revocation renders the transfer incomplete until his death (*Reinecke* v. *Northern Trust Co., supra*) the reservation by a settlor of the power to alter and modify the interests of the beneficiaries has the same effect.

Petitioner also places some reliance upon article 21 of Regulations 70.[1] If the cited regulation has any applicability, which is doubtful, it does not require a different conclusion. The words used therein— "additions and betterments"—indicate an intention to limit it to buildings or other physical properties; but even if it be assumed that the regulation was meant to embrace other property it could have no application under the stipulated facts. The trustees made no "additions" or "betterments" to the property turned over to them. They sold some of it at a profit and invested the proceeds of the sales, including the profit, in other property. All of it, however, as we have heretofore pointed out, was subject to the power reserved by the settlor. If it were necessary for us to point to a specific article of the Commissioner's regulations authorizing the inclusion in gross estate of the value of all the property comprising the corpus of the trust at the time of the decedent's death—but it is not since the statute itself requires that to be done—article 15 of Regulations 70 would probably be selected. It provides, as applicable here: "* * * If the enjoyment of the property or the interest transferred * * * was subject at the date of the decedent's death to change by the exercise of any power to alter, amend, or revoke * * * *the entire value of the property*, or the interest transferred, *as of the date of decedent's death* must be included in the gross estate * * *." (Italics supplied.)

We hold that the value, on the date of the death of the decedent, of all the property then comprising the corpus of the trust, or $2,290,155.62, must be included in gross estate.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

[1] ART. 21. *Valuation of property transferred.*—The value must be determined as of the date of the decedent's death. (See Art. 13.) Where the transferee makes additions to the property, or betterments, the enhanced value of the property at that date, due to such additions or betterments, is not to be included.