RECORD REALTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4292. Promulgated April 25, 1946.

*Harvey H. Berger, C. P. A.*, for the petitioner.
*William F. Robinson, Esq.*, for the respondent.

OPINION.

Harron, *Judge*: The question is whether expenses in the total sum of $10,934.31, which were incurred in preparing and consummating the bondholders' and debtor's plan of reorganization and in filing and carrying through petitioner's voluntary petition for a reorganization under section 77–B of the Bankruptcy Act, as amended, are the type of capital expenses which may be spread over a fixed period and deducted in annual, proportional amounts, over such period. Petitioner contends that, for tax deduction purposes, it is entitled to spread the expenses over the extended period of the bond indebtedness, which ends on March 1, 1947. Under such plan of amortization of the expenses, petitioner claims that it is entitled to deduct $1,815.99 in the taxable year.

In support of its general contention, petitioner contends that the expenditures in question were paid by or for petitioner and that the expenses were incurred "in refinancing a mortgage bond issue." Under petitioner's description of the expenses as expenses of refinancing its bonds, petitioner argues that there should be applied to these expenses in this case the rule expressed in *Horn & Hardart Baking Co.*, 19 B. T. A. 704, 706, under issue 2 of that case, where it was held that commissions paid to a firm of investment brokers for selling bonds of the taxpayer were capital expenses rather than currently deductible business expenses, and that such expenses should be spread over the life of the bonds. Petitioner, in its supplemental brief, also cites *S. & L. Building Corporation*, 19 B. T. A. 788, 795, 796; affd., 288 U. S. 406,

on another point, and relies upon the holding made in that case under issue 1.

The facts and the contentions of the parties have been clarified by the filing of a supplemental stipulation of facts, together with additional joint exhibits, and supplemental briefs.

Respondent recognizes that no receiver was appointed in the 77–B proceedings, but that petitioner was left in possession of its property, subject to an existing arrangement under which the property was managed by a management company and subject to an assignment of rents to the indenture trustee. From this it appears, and there is no evidence to the contrary, that petitioner reported the rents from the property in its income tax returns during the years in which the 77–B proceedings were pending. This is noted to make it clear that, as we understand the situation, there was no filing of a return by a receiver to report the income earned by the property during that period (see *415 South Taylor Building Corporation*, 2 T. C. 184), so that, if any deductions are allowable under petitioner's theory, petitioner is the proper person to claim the deductions because it was reporting the income therefrom in returns which it was required to file. See *H. W. Clark Co.*, 1 T. C. 891.

Respondent contends, on supplemental brief, that the expenses in question were not expenses of refinancing the mortgage debt of petitioner, as it contends, but were expenses of a reorganization; that such expenses of reorganization are in the same class as expenses of organization; and that, since organization expenses are capital expenses which can not be amortized ratably over a definite period, the reorganization expenses, likewise, can not be amortized ratably over a definite period. Respondent cites *Hershey Manufacturing Co.*, 14 B. T. A. 867, 877 [1] (and cases cited therein); *Surety Finance Co. of Tacoma*, 27 B. T. A. 616, 620; affd., 77 Fed. (2d) 221; and *Morris Plan Bank of Cleveland*, 31 B. T. A. 253, 255, as the authorities which provide the rule to be applied here. He contends that *Horn & Hardart Baking Co., supra*, is distinguishable, and does not control the question presented. He argues that the rule expressed in *Julia Stow Lovejoy*, 18 B. T. A. 1179, which was relied upon by the Board of Tax Appeals in the *Horn & Hardart Baking Co.* case, is not applicable nor controlling here; that the *Lovejoy* case is distinguishable; and that the voluntary filing of a petition for reorganization under section 77–B was not primarily to obtain a new loan or an extension of the foreclosed mort-

---

[1] *Hershey Manufacturing Co.*, 14 B. T. A. 867, was affirmed in part and modified on the issue for which it is cited by respondent, 43 Fed. (2d) 298, 300; but no further action was taken by the parties on the point which was remanded, and the Board of Tax Appeals respectfully declined to follow the Circuit Court's view, but applied the rule stated in the *Hershey* case before the Board, in *Surety Finance Co. of Tacoma, supra*, at p. 620.

830

gage, but was simply a proceeding authorized by statute and utilized by petitioner to save its investment and its property. Respondent argues, further, that the expenses in question were paid exclusively for and on behalf of the bondholders, and not the petitioner; that petitioner had lost control of the property and held a bare legal title; and that the expenses were paid out of a trust fund held by the indenture trustee, and so it is open to question whether the expenses were paid by or for petitioner.

The pertinent facts, in our opinion, include the following: At the time petitioner acquired the fee title to Roselan Apartments on February 17, 1936, the mortgage bonds were in default and the Circuit Court of Wayne County had entered a decree for foreclosure on October 9, 1935. The due date of the bonds was March 1, 1937. On April 14, 1937, petitioner filed a voluntary petition for reorganization under section 77–B in the District Court. The only creditors affected were the holders of the bonds. The plan of reorganization provided for extension of the foreclosed mortgage and of the bonds for a 10-year period to March 1, 1947. When the plan of reorganization of petitioner was approved, the mortgage was reinstated and extended, the maturity date of $324,100 of bonds was extended, unpaid past-due interest was canceled in part, and the rate of future interest was reduced. While the principal amount of the bonds was reduced, to the extent of $36,000, petitioner's indebtedness was not thereby eliminated in that amount because it gave its note for $36,000, but the cancellation of past-due interest in excess of $39,616.67 represented elimination of part of the petitioner's indebtedness in an amount which has not been stated in this record.[2]

As petitioner contends, *Horn & Hardart Baking Co., supra,* does stand for the proposition that the costs of placing a mortgage should be amortized over the life of the mortgage. In the instant case, however, the reinstating of the mortgage and the extension of the maturity date of the bonds were not the only results attained through the expenditure of the sum here involved. The bond indebtedness, which was secured by the mortgage, was reduced by $36,000, and petitioner's indebtedness on past due interest, which was also secured by the mortgage, was canceled in part. The exact amount canceled is not shown by the record. Also, the obligation of petitioner for future interest was reduced from 6½ percent to 4 percent. Also, petitioner was given a 10-year extension of time within which to pay the uncanceled past due interest in the amount of $28,440. The cancellation

---

[2] The record does not show the amount of accrued and unpaid interest on the bonds. The interest, at 6½ percent, on $360,000, principal, is $23,400 per annum. The unpaid interest for the period of 5 years and 6 months from March 1, 1931, to September 1, 1936, would be $128,700. The difference between $128,700 and $39,616.67 is $89,083.33, and the interest canceled may have been in about that amount.

of part of the past due interest, which may have been as large as $89,000 (even figures), was an important result of the proceedings under section 77–B of the Bankruptcy Act, as amended. It appears that petitioner could not have continued to carry the property unless part of its accrued and unpaid obligations has been canceled. Petitioner could not have kept title to the property unless its defaults under the trust mortgage had been cured under the plan of reorganization under the 77–B proceedings. A decree for foreclosure of the mortgage had been entered and the property would have been sold at public auction unless the decree for foreclosure had not been permanently stayed by the District Court under the 77–B proceedings.

Therefore, we think petitioner oversimplifies the question in contending that the expenses in question are in a class with title fee expense, and such, which have been referred to as "mortgage fees." Petitioner overlooks the fact that the expenses in question, in the total amount of $10,934.31, were offset by the amount of the canceled indebtedness consisting of interest, which was, apparently, in excess of $10,934.31.

The expenses were paid in cash out of current receipts from rents under orders of the District Court which released, in all, $10,934.31 of receipts from rents from the claims of the bondholders and the priorities of the trust indenture. If the District Court's orders had not directed that such total amount of receipts from rents could be used to defray the costs of the reorganization, that amount could have gone to bondholders in some way to be applied to their claims. The entire plan of canceling part of petitioner's indebtedness and of extending the payment of the uncanceled part of the debt had to take into consideration the earnings of the property, the available cash on hand, and the assignment of rents to the trustee. Under the most practical view, the savings in dollars to petitioner by the cancellation of part of its debt was a net amount over and above the expenses of carrying out the plan and getting the plan approved; and the offsetting of the expenses against a larger sum representing canceled debt left no amount of the expenses to be amortized over future years. It is so held.

The reorganization under section 77–B was completed in 1940. Petitioner reports its income on the accrual basis of accounting. Whatever may be necessary with respect to making any possible adjustments as a result of the 77–B reorganization, such adjustments must be made for the year of 1940. The taxable year before us is 1941. Under the holding made above, no part of the expenses in question can be deducted in 1941.

*Decision will be entered for the respondent.*