## COMMISSIONER OF INTERNAL REVENUE v. GIDWITZ' ESTATE et al.

## GIDWITZ' ESTATE et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10370-1.

United States Court of Appeals
Seventh Circuit.

May 12, 1952.

Ellis N. Slack, Acting Asst. Atty. Gen., Carolyn R. Just, Helen Goodner, Special Assts. to the Atty. Gen., for Commissioner.

Sidney U. Hiken, Harry R. Hurvitz and Morris W. Needlman, all of Chicago, Ill. (Hurvitz & Needlman and Gottlieb and Schwartz, all of Chicago, Ill., of counsel), for Estate of Gidwitz.

Before KERNER, DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

These two cases involve a petition and a cross-petition, both seeking a review of a decision of the Tax Court of the United States, 14 T.C. 1263, which determined that there was a deficiency in estate taxes in the amount of $33,541.04 against the estate of Jacob Gidwitz, deceased.

The Tax Court determined that a transfer in trust made by the decedent on December 30, 1936, was made in contemplation of death within the meaning of § 811(c) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 811(c) (1) (A), and that the amount thereof should, therefore, be included in the value of decedent's gross estate for estate tax purposes. From this part of the decision of the Tax Court the

representatives and heirs of the decedent's estate, hereinafter referred to as the "Taxpayer," appeal.

The Commissioner of Internal Revenue petitioned for a review of that part of the decision of the Tax Court which determined that the income to the trust which accrued between the time of the transfer and the date of the decedent's death did not constitute a part of decedent's gross estate for estate tax purposes.

### Appeal No. 10371

The decedent, Jacob Gidwitz, died on December 11, 1944, at the age of 80 years. He left, surviving him, the following members of his immediate family.

| Name | Relationship | Marital Status | Age |
| --- | --- | --- | --- |
| Rose Gidwitz | Widow | | 64 |
| Joseph L. Gidwitz | Son | Married—2 children | 39 |
| Gerald S. Gidwitz | Son | Unmarried | 38 |
| Willard M. Gidwitz | Son | Unmarried | 36 |

On December 30, 1936, approximately eight years prior to his death, the decedent created the trust here in issue and at that time transferred to the trust 83³⁸⁄₁₀₀ shares of the capital stock of the International Furniture Company. This represented one-sixth of the total capital stock of that company. The company up to that time had never paid a dividend but it was then planning to pay a total dividend of $60,000 in order to avoid payment of corporate tax on undistributed profits. One of the decedent's purposes in creating the trust was to have the income represented by his one-sixth of that dividend paid to the trust rather than to himself and thereby avoid additional personal liability for the income tax on the $10,000, which would have amounted to approximately $2,000.

At the time of the transfer of the stock to the trust the decedent reported the transfer for gift tax, reporting the value of the shares transferred as $25,929.17. The value of the gift was increased by the Commissioner to $55,416.67 on which the decedent paid a gift tax of $162.50. On the date of the decedent's death the corpus of the trust, including the income accumulated to that time, was valued by the Commissioner at $341,102.02.

The decedent named himself and his wife as trustees of the trust. The trust instrument provided that the income was to be accumulated during the decedent's lifetime and, upon his death, was to be distributed to his children and their descendants per stirpes. After the death of the decedent the income on the trust was to be paid to the decedent's widow during her lifetime. Upon the death of both the decedent and his wife, the principal of the trust was then to be distributed to their children and to the descendants of any deceased child per stirpes. The distribution was to be so made that the total value of property distributed to each child plus the amount then owned by the child would equal the total so distributed and owned by each of the other children or by the descendants of a deceased child. The beneficiaries were given no power to alienate the interests received by them under the trust. The decedent and his wife resigned as trustees on August 5, 1942, at which time their three sons were substituted as trustees.

About the same time that the decedent caused his attorney to prepare the trust instrument he also had the attorney prepare his last will and testament which was executed on November 3, 1936. The will provided that the residue of the decedent's estate should be held in trust by his wife and their three sons and that the income should be paid to the widow during her life. The will also contained provisions similar to those in the trust instrument for the distribution of the principal of the testamentary trust at the death of the widow in such a manner as to equalize the holdings of the three sons or the descendants of any son

who might then be deceased. The idea of the provisions in the trust instrument and in the will for equalizing the holdings of the sons originated with the decedent and these provisions were placed in the two instruments despite the efforts of the decedent's attorney to discourage the decedent from the use of such a plan.

The Tax Court found that the decedent had been having some trouble with his heart and that he knew in 1936 that his heart was not in good condition, but the Tax Court expressly found that the decedent "did not believe at that time that he was in imminent danger of death but, on the contrary, he expected to live for a number of years." The decedent did eventually die of a heart attack, coronary thrombosis.

The Tax Court also found that:

"The dominant motive of the decedent in transferring property to the trust created on December 30, 1936, was to provide for his wife, their children and descendants of any deceased child after his death. The trust and the decedent's will were parts of an integrated plan for the disposition of the larger portion of his estate upon his death. The trust was a substitute for a testamentary disposition and the transfer of property to the trust was in contemplation of death."

In its opinion the Tax Court pointed out that, although the decedent was an elderly man and was not in the best of health,

"* * * the conclusion that the transfer to the trust was in contemplation of death stems more from the terms of the instrument than from the condition of the decedent's health at the time he made the transfer. He was then past 72 years of age and he died about 8 years later from a heart attack. He liked to travel and to fish and he expected to enjoy a number of years of life after 1936."

But the Tax Court said:

"Nevertheless, the terms of the trust which he created, paralleling to a considerable extent the terms of his will, when considered in the light of all other facts, indicate pretty clearly that the transfer to the trust was actually made in contemplation of death."

While admitting that there was evidence that decedent had in mind the avoidance of some income taxes, a purpose connected with life rather than with death, the Tax Court rejected the contention that the decedent's dominant motive was to save income taxes. The Court said:

"However, a disposition which is in effect a testamentary disposition is made in contemplation of death even though, to save taxes, it may be put in the form of an *inter vivos* trust rather than as part of a will."

The applicable statute on this question, 26 U.S.C.A. § 811(c) (1) (A), provides that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal * * *.

\* \* \* \* \* \*

"* * * To the extent of any interest therein of which the decedent has at any time made a transfer (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"* * * in contemplation of his death; * * *."

The meaning of the words "in contemplation of death" as used in a prior estate tax statute was discussed by the Supreme Court in United States v. Wells, 1931, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867. In that case the Supreme Court said, 283 U.S. pages 116, 117, 51 S.Ct. at page 451:

"The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * As the transfer may otherwise have all the indicia of a valid gift *inter vivos,* the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition."

In considering the necessity of the transferor's recognizing the imminence of death, the Court said, 283 U.S. at page 117, 51 S.Ct. at page 451:

"As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers."

Again, 283 U.S. on page 118, 51 S.Ct. on page 452, the Supreme Court said:

" * * * the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.' "

The taxpayer relies heavily on Colorado National Bank of Denver v. Commissioner, 1938, 305 U.S. 23, 59 S.Ct. 48, 83 L.Ed. 20. In that case the Board of Tax Appeals, on facts distinguishable from the facts in the instant case, found that the donor of an *inter vivos* gift in trust did not make the transfer in contemplation of death. The Court of Appeals reversed the decision. Commissioner v. Colorado National Bank, 10 Cir., 95 F.2d 160. The Supreme Court, in Colorado National Bank v. Commissioner, 305 U.S. 23, 26, 59 S.Ct. 48, 49, 83 L.Ed. 20, pointed out that "Dominant purpose was a question of fact for determination by the Board", and said there was substantial evidence to support the conclusion of the Board. In that opinion the Supreme Court also said, speaking of the decision of the Court of Appeals,

"The court's opinion seems to rest upon an erroneous interpretation of the term 'in contemplation of death.' The meaning of this was much discussed in United States v. Wells, supra. We adhere to what was there said."

Eight years later, in Allen v. Trust Company, 1946, 326 U.S. 630, 635, 66 S.Ct. 389, 391, 90 L.Ed. 367, the Supreme Court cited and quoted from the Wells case, indicating approval of the principles as stated in the Wells case, and again emphasized the fact that "The transfer may be so motivated, even though the decedent had no idea that he was about to die." See also Becker v. St. Louis Trust Company, 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, McCaughn v. Real Estate Land Title & Trust Company, 297 U.S. 606, 56 S.Ct. 604, 80 L.Ed. 879, and City Bank Farmers Trust Company v. McGowan, 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483.

The Allen case, supra, also states 326 U.S. at page 636, 66 S.Ct. at page 392, 90 L.Ed. 367, that "the dominant, controlling or impelling motive (of the transferor) is a question of fact in each case." Citing the Wells and Allen cases, supra, the Supreme Court, in Commissioner v. Culbertson, 337 U.S. 733, 743, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659, said:

"Triers of fact are constantly called upon to determine the intent with which a person acted. The Tax Court, for example, must make such a determination in every estate tax case in which it is contended that a transfer was made in contemplation of death, for 'The question, necessarily, is as to the state of mind of the donor.' "

Decisions of the Tax Court are to be reviewed by the Court of Appeals "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury". 26 U.S.C.A. § 1141. Rule 52(a) of the Federal Rules of Civil Procedure provides that in reviewing decisions of a District Court:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." 28 U.S.C.A. Rule 52 F.R. Civil P.

We are confronted in the instant case with much evidence, some of it conflicting, as to the decedent's health at the time he created the trust and as to other facts which might tend to indicate his motives in making the transfer to the trust. There was evidence to the effect that during the last ten years of his life Gidwitz traveled extensively, both in the United States and abroad; that he retained a keen interest in his business; that he spent considerable

time fishing—in Florida in the winter and in northern lakes in the summer; that he did considerable traveling in his automobile, which he personally drove; that on his fishing trips his boat was carried on a trailer hitched to his automobile; and that he had sufficient strength to help load and unload the boat from the trailer. There was other evidence to indicate that in many ways the decedent was more active and physically stronger than would ordinarily be expected of a man his age. There was also testimony which would tend to prove that the decedent's purpose in making the transfer to the trust was to save income taxes.

On the other hand, it was shown that at the time the transfer was made Gidwitz was 72 years of age. He had been suffering from a heart condition from which he eventually died. In the estate tax return which was executed by his widow it was stated that the length of the decedent's last illness had been 15 years. Gidwitz, of course, knew of his heart condition at the time he made the transfer. He did dispose of a major portion of his property by the transfer to the trust. The beneficiaries were the members of his immediate family. They were not to receive any benefits from the trust until after the decedent's death and they were given no power to alienate any of their rights under the trust. About the same time that the trust was created Gidwitz executed a last will and testament leaving the balance of his property to the same beneficiaries, the members of his family, and with similar provisions as to the income going to his widow during her life and as to the distribution of the principal to their children upon her death.

■ Without attempting a more detailed digest of the evidence, but considering the record as a whole, including both the evidence for and the evidence against the contention of the Commissioner, we cannot say that the finding of the Tax Court that the transfer was made in contemplation of death was clearly erroneous. We think the record furnishes a reasonable basis for that finding.

Appeal No. 10370

The Commissioner insists that the Tax Court erred in not including in the decedent's gross estate the income, together with property purchased by such income, which accrued in the trust prior to the decedent's death. When Gidwitz died the total assets in the trust had a value of $341,102.02. The original shares of stock transferred to the trust had a valuation of $140,610. The difference of $200,492.02 represented the value of accrued income and property purchased for the trust with accrued income.

The Commissioner, while admitting that the statute places in the gross estate only property *transferred* by the decedent, bases the Government's claim that the valuation of the gross estate should include all income received by the trust prior to the decedent's death on the theory that the property transferred to the trust in 1936 included not only the ownership of the 83⅓ shares of stock but also a separate property right to receive the income on the stock. It is argued that the value of this property right to receive income is measured by the income accumulated in the trust prior to the decedent's death.

The same theory advanced by the Commissioner in this case was rejected by the Supreme Court in Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940. The Maass case involved two estates where the executors had elected to have the gross estates valued as of one year after the decedents' deaths, pursuant to 26 U.S. C.A. § 811(j). During the year after the decedents' deaths the executors had collected interest and dividends on bonds and stocks belonging to the estates. The Commissioner determined tax deficiencies against the estates for failures to include these collections as part of the gross estates. A Treasury regulation, then being enforced, required the return and inclusion of such income as a part of the gross estate. The Supreme Court, while recognizing that a bond embodies two promises to pay—one to pay the principal at maturity and the other to pay interest periodically—and while recognizing that the income factor affects the value of a security,

said, 312 U.S. at page 448, 61 S.Ct. at page 633:

"But these elements are not separately valued in appraising the worth of the asset at any given time."

The Supreme Court there, 312 U.S. at page 447, 61 S.Ct. at page 633, agreed with the taxpayer:

"* * * that the Government's position is unreal and artificial; that it does not comport either with economic theory or business practice; and that the regulation is an unwarranted extension of the plain meaning of the statute and cannot therefore, be sustained."

In Humphrey's Estate v. Commissioner, 5 Cir., 162 F.2d 1, the donees of an *inter vivos* gift made in contemplation of death, by an improvident investment, lost one-half of the amount of the gift. It was contended that the half of the property lost should not be included in the decedent's gross estate. The Court held, however, that it was the *transferred* property which was to be valued at the time of the decedent's death. The Court said, 162 F.2d at page 2:

"What is to be valued at the time of decedent's death is *the very property which the decedent transferred.*" (Our emphasis.)

In Burns v. Commissioner, 5 Cir., 177 F.2d 739, affirming Estate of James E. Frizzell, 9 T.C. 979, a father established an irrevocable trust and, in contemplation of death, made an *inter vivos* gift of certain shares of the stock of the Coca Cola Company to the trust. The trustee invested part of the income from the trust in other stocks and bonds prior to the donor's death. The Court accepted the conclusion of the Tax Court that that part of the corpus of the trust which represented income received prior to the death of the donor, or property acquired with such income, had not been *transferred* by the decedent and, therefore, should not be included in the decedent's gross estate for estate tax purposes. The Court said, 177 F.2d at page 741:

"The tax statute in question should be strictly construed in favor of the taxpayer, and since it does not expressly provide for the inclusion of income derived from the *transferred* property in the gross estate, it is not our prerogative, by judicial fiat, to give it that effect. Title 26 U.S.C.A.; Sections 811 (c), 811(j). (Citing cases.)" (Our emphasis.)

As against the principles announced in the above cases the Commissioner cites decisions involving other provisions of the Internal Revenue Code which admittedly deal with transfers intended to take effect in possession or enjoyment at or after death, or in which the grantor had retained until death the power to designate the persons who would enjoy the property, or in which the grantor had retained until death the power to alter, amend or revoke. The Commissioner admits that such transfers are included in the gross estate on the theory that such a transfer does not become complete and effective until death, whereas a transfer in contemplation of death is included because of the motive inducing it. The Commissioner argues that the same rules should apply in both classes of cases. Such an argument ignores the realities of the two types of transfers.

In transfers made in contemplation of death, such as in the instant case, the donor has made an actual transfer during his life. The transfer became effective at that time. The transfer was irrevocable. The terms of the trust agreement expressly prohibited any change in the provisions of the agreement which would in any manner effect a change relating to the distribution, disposition, possession or enjoyment of the trust property. Here the income was paid to the trust because it belonged to the trust, not to Gidwitz. The income was payable to the trust and belonged to the trust as an incident of the ownership by the trust of the stock transferred to the trust by Gidwitz in 1936. The Tax Court correctly held that such income and the property acquired with such income should not be included in the decedent's gross estate for estate tax purposes.

In both of these petitions for review the decision of the Tax Court is affirmed.