John J. ROUND, Jr., et al., Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 6248.

United States Court of Appeals First Circuit.

June 4, 1964.

James Charles Roy, Boston, Mass., for petitioners.

Earl J. Silbert, Attorney, Department of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen. and Lee A. Jackson and Loring W. Post, Attorneys, Department of Justice, were on brief for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for review of the decision of the Tax Court of the United States determining a deficiency of $162,-072.88 in the federal estate tax of John J. Round, Sr., deceased.

The petitioners are Boston Safe Deposit and Trust Company and John J. Round, Jr., co-executors of the Estate and under the will of John J. Round, deceased, late of Wakefield, Massachusetts (hereinafter called decedent).

The decedent died on April 4, 1958 at the age of eighty-six. In 1934 and 1935 the decedent established three "spendthrift" trusts under which his five minor children were the principal beneficiaries. The first trust (hereinafter called the September trust) was established on September 14, 1934 by a trust agreement entered into between decedent and Old Colony Trust Company. The second trust (hereinafter called the August trust) was established by a trust agreement entered into between decedent and State Street Trust Company of Boston on August 21, 1935. On December 31, 1935, the third trust (hereinafter called the December trust) was established by a trust agreement entered into between decedent and State Street Trust Company.

The August trust provided for the children to receive all of the income from their respective shares "so long as they shall live." It also allowed the trustees to advance or pay over portions of the principal held for the income beneficiary "if at any time in their sole discretion they shall deem such a distribution desirable." The September and December trusts gave the trustees the power to invade and advance principal "in case of emergency, from time to time and upon such conditions as in their sole discretion they shall determine to be for the best interests of said children." The September and August trust instruments gave the trustees the express power to withhold and accumulate income otherwise payable to the children in quarterly installments during the terms of the trusts.[1]

The August and December trusts allowed for the resignation of "any trustee hereunder * * * by giving a notice in writing mailed to the last known address of all of the persons immediately interested therein, stating the fact of such resignation. * * *" All of the trusts provided that upon the decease, resignation or incapacity of decedent, the corporate trustee should act as the sole trustee of the particular trust.

In the latter part of 1955 or the early part of 1956 the decedent was unable to handle the details of his affairs. On April 6, 1956, he gave his son, John J. Round, Jr., a general power of attorney, and thereafter the son handled most of the decedent's affairs.

In October, 1956, the decedent's securities were placed in a non-supervised custodian account with Boston Safe Deposit and Trust Company. Under this type of account the bank had custody of the securities, did the bookkeeping, collected income and disbursed income. It had no other duties.

After the establishment of the custodian account, the decedent continued to have difficulty, and in 1957 he discussed with his son the appointment of a conservator. As a result of this conversation, the son communicated with George M. Poland, an attorney who was a lifelong friend of decedent. Poland had several talks with the decedent at his home during which decedent told Poland that he could not keep track of his affairs.

Poland explained to decedent what the appointment of a conservator would accomplish and discussed the manner of securing such an appointment. It was decided that it would be best for decedent himself to petition. The ground for the

1. The Tax Court noted that in the December trust, despite the absence of any express power, more than $20,000 in undistributed income was accumulated to principal. It noted, further, that the instrument throughout referred to "accumulations." The Court stated that "there is no suggestion that in this respect the three trusts should be treated differently."

application for the conservatorship was discussed and Poland and decedent agreed that it would be on the ground that decedent was incapacitated by age. Poland prepared the petition and performed the necessary legal work in court to secure the appointment. The petition, signed by the decedent, was filed in the Middlesex Probate Court on October 25, 1957.

As required by law, the certificate of Dr. Robert Dutton was filed in court on the same day, certifying that he was a registered physician, that he had personally examined decedent within one day of the signing of the certificate, and·that in his opinion "[decedent was] mentally competent to petition the Court for the appointment of a conservator of his property and [was] incapable by reason of advanced age of caring for himself and his estate."

The decree of the Middlesex County Probate Court dated October 28, 1957, recited that "After a hearing of the matter of said petition, it appears to the Court that said John J. Round is incapable of caring properly for his property" and decreed that the Boston Safe Deposit and Trust Company be appointed conservator of the property of the decedent.

This decree was in full force and effect from October 28, 1957 until the death of the decedent on April 4, 1958 and was not revoked nor modified. As of the date of his death, decedent had never tendered in writing his resignation as co-trustee of any of the trusts.

Upon the entry of the conservatorship decree Boston Safe Deposit and Trust Company took charge of the property of decedent as conservator and had sole management and responsibility until the date of his death. Shortly after its appointment as conservator Boston forwarded to Old Colony Trust Company and to State Street Trust Company certified copies of its appointment. Both trust companies thereupon halted all compensation payments to decedent and took over sole responsibility for the trusts. There is no evidence that decedent took any action in regard to the trusts following ·the appointment of the conservator.

The trust property was not included in decedent's gross estate on the estate-tax return. The fair market value as of the date of decedent's death of the property held in the three trusts was $493,-445.92. Included in this value was undistributed income totalling $131,109.21 which had been accumulated and added to the principal. The respondent included the value of the three trusts at $493,445.92 in the decedent's gross estate and determined a deficiency in the Federal estate tax of $162,072.88.

The Tax Court sustained the action of respondent. It held that decedent in establishing the trusts, retained sufficient powers as co-trustee to accumulate or distribute income and to invade and distribute corpus to make the trusts includible in his estate by reason of section 2036(a) and section 2038(a) (2) of the Internal Revenue Code of 1954.[2]

2. "§ 2036. *Transfers with retained life estate*
"(a) *General rule.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or
"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."
"§ 2038. *Revocable transfers*
"(a) *In general.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—* * *
"(2) *Transfers on or before June 22, 1936.*—To the extent of any interest therein of which the decedent has at

Petitioners do not here question this holding (except as to the income accumulations which will be discussed later) and, in any event, it is supported by well-established authority. E. g., Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953); Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S. Ct. 257, 90 L.Ed. 228 (1946); Industrial Trust Co. v. Commissioner of Internal Rev., 165 F.2d 142 (1st Cir.1947); Hurd v. Commissioner of Internal Revenue, 160 F.2d 610 (1st Cir.1947).

Petitioners' argument is that at the date of decedent's death, decedent no longer retained his powers as co-trustee; that under the terms of the trust decedent was removed as trustee upon his becoming incapacitated; further, the appointment of a conservator for decedent's property was a definitive act which extinguished all of the right, power and authority of decedent to act as co-trustee under the three instruments. The Tax Court held that decedent was not permanently removed from his trusteeship position and the appointment of a conservator was not the definitive act called for by Hurd v. Commissioner of Internal Revenue, 160 F.2d 610 (1st Cir.1947), affirming Estate of Edward L. Hurd, 6 T.C. 819 (1946).

The three trust instruments contained the following provision:

> "Upon the decease, resignation or incapacity of * * * [decedent, the corporate trustee] shall act as sole Trustee hereunder, and shall exercise all of the rights, privileges, immunities, discretions and duties hereunder."

Petitioners read this provision to provide that upon any of the three described contingencies, the corporate trustee would *become* sole trustee. It is reasoned that since upon resignation or death the corporate trustee would, in fact, become sole trustee rather than merely *act* as such, a harmonious construction of the provision requires the finding that upon incapacity as well, the corporate trustee would become sole trustee, extinguishing any powers decedent had over the trust.

While it is true that regardless of the words used in the trust instruments, the corporate trustee would, in fact, become sole trustee upon death or resignation of decedent, this fact is the necessary result of the permanent removal caused by those two events. Such a permanent removal does not necessarily follow from incapacity, which is often a temporary condition. Only an unusually strict construction of the provision could lead to the conclusion that upon the incapacity of a co-trustee his powers over the trust would be forever terminated. "Incapacity" is not defined in the trust instruments and if the word is given its common meaning, a two week hospital stay following an automobile accident would find a trustee sufficiently incapacitated and subject to removal within the contended-for meaning of the trust provision. It could not have been the intention of decedent, who as co-trustee maintained a large share of control over the trust, that he could be so easily ousted. Rather, it is more likely that the provision was drawn with the intention of decedent resuming his duties as co-trustee when the incapacity was at an end.[3]

any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June

22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph."

3. Respondent suggests that the provision was inserted to effectuate decedent's intention that no successor trustee should ever be appointed in his place. "Without this provision and particularly in light of the specific clause in two of the trust instruments providing for the resignation of any trustee, a court may well have

In Hurd v. Commissioner, supra, 160 F.2d at 613, this court said "The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power." So long as the powers retained by decedent *still existed in his behalf* the trust property was includible in his estate. What is required, this court said, is "some definitive act correlating the decedent's actual incompetence with his incapacity to serve as trustee." The court suggested that besides resignation and removal, an adjudication of mental incompetency might be sufficient to extinguish a trustee's interest in the trust, undoubtedly following the belief that under the circumstances of that case a legal determination of insanity was the least that was necessary if the purpose of the statute was not to be defeated.[4] The Tax Court, however, has gone even further and has held that a judicial declaration of a trustee's incompetence was insufficient to terminate for tax purposes a power held under a trust where the New York law "specifically grants the Supreme Court of New York jurisdiction over the care of the person and property of an insane person." Estate of Charles S. Inman, 18 T.C. 522, 526 (1952), rev'd on other grounds, 203 F.2d 679 (2d Cir. 1953).

■ We do not need to go that far here. Suffice to say that decedent was never declared mentally incompetent. The appointment of a conservator did not remove the possibility that decedent could have recovered and resumed his position as co-trustee. Mass. Laws Ann. ch. 201 § 18 (1955). A conservatorship "raises * * * no [conclusive] presumption of continued incapacity." Chase v. Chase, 216 Mass. 394, 396, 103 N.E. 857, 858 (1914). The trust instruments provided that upon incapacity the corporate trustee shall act as sole trustee, thus leaving decedent free to resume his duties as trustee upon the recovery of capacity. The definitive act required before a trustee's powers can be said to have been extinguished must certainly be more than an act which contains within it the possibility of a temporary incapacity. Estate of Marshal L. Noel, 39 T.C. 466, 472 (1962); Estate of Virginia H. West, 9 T.C. 736 (1947), aff'd sub nom. St. Louis Union Trust Co. v. Commissioner of Internal Rev., 173 F.2d 505 (8th Cir. 1949). To this, it may be added, as the Tax Court noted, that the Probate Court's adjudication of decedent's capacity to file the petition for conservatorship makes clear that he "would have had capacity to resign at that time had it been his intention to abandon the trusteeship." 40 T.C. 979. See Simons v. United States, 135 F.Supp. 461, 463 (E.D.N.Y.), aff'd per curiam, 227 F.2d 168 (2d Cir. 1955), cert. denied, 350 U.S. 949, 76 S.Ct. 323, 100 L.Ed. 827 (1956).

The Tax Court, relying on its own prior decisions, held that the undistributed accumulated income in the trusts was includible in decedent's gross estate along with the trust principal. Estate of Myrtle H. Newberry, 17 T.C. 597 (1951), rev'd on other grounds, 201 F.2d 874, 38 A.L.R.2d 514 (3rd Cir. 1953);

concluded that decedent intended upon his death or resignation, two events permanent in character, that a successor co-trustee be appointed. See, 1 Scott on Trusts (1939), Section 108.1. The effect of this provision, therefore, was to clear up this uncertainty."

4. In Hurd the decedent, as one of the trustees, had the power, together with the other trustee to terminate the trust. The taxpayer argued that the decedent had been mentally incompetent for more than a year prior to death (although not adjudged incompetent in any legal proceedings) and, therefore, had been incapable of exercising the power at the time of his death. In rejecting this argument, the Tax Court said at 6 T.C. 823:

"* * * While the matter is one of first impression, we would think that some definitive action might well be necessary to terminate the retained power of the decedent before the purpose of the statute can be defeated. It is not unusual that during a protracted illness one might be incapable both physically and mentally of making normal decisions affecting property rights, and yet we wouldn't suppose that the statute did not apply in such cases. Petitioner's argument is a plausible one, but we are not convinced."

Estate of E. A. Showers, 14 T.C. 902 (1950), remanded by stipulation (5th Cir. 1951); Estate of Cyrus C. Yawkey, 12 T.C. 1164 (1949). Petitioners contend that the result reached by the Tax Court here and in its prior decisions is directly contrary to the result reached by the Seventh Circuit in Commissioner of Internal Rev. v. McDermott's Estate, 222 F.2d 665, 55 A.L.R.2d 410 (7th Cir. 1955), a decision followed by the Sixth Circuit in Michigan Trust Co. v. Kavanagh, 284 F.2d 502 (6th Cir. 1960).[5] Respondent concedes that these cases directly support petitioners' argument that accumulated trust income is not includible in decedent's gross estate, but urges that these cases were wrongly decided and should not be followed by this court.

In McDermott, the decedent had made himself trustee of a number of *inter vivos* trusts which he had created for the benefit of his wife and seven children. The trusts contained the usual provisions except that the trustee was authorized to accumulate part or all of the trust income, adding such accumulations to corpus. In the seven trusts established for the children, the trustee was authorized to invade the corpus and make distribution to the named beneficiary in the event need arose because of "accident, sickness, or other emergency or unusual condition of any kind presently unforeseen." The trustee could not otherwise revoke or modify the terms of the trust and could not benefit from or acquire an interest in either the corpus or the income of the trusts. The original corpus in each trust consisted of securities upon which a dividend was realized shortly after the creation of the trusts and accumulated therein. After the payment of the single dividend the trusts were inactive. The Tax Court overruled the Commissioner and held that while the corpus was taxable, the accumulated income was not taxable under sections 811 (c) (1) (B) and 811(d), (1939 predecessors of sections 2036(a) and 2038(a) (2) of the 1954 Code).

The Seventh Circuit affirmed the Tax Court, relying upon Commissioner of Internal Revenue v. Gidwitz' Estate, 196 F.2d 813 (7th Cir. 1952) and Burns v. Commissioner of Internal Revenue, 177 F.2d 739 (5th Cir. 1949), affirming Estate of James E. Frizzell, 9 T.C. 979 (1947). It held that the transfer of property to the trust was complete prior to the death of the settlor and the accumulations, not being part of the property transferred, were not includible in his gross estate. The court rejected the Commissioner's contention that the transfer of property to the trusts was not complete until the settlor's death since the statute rendered property transferred taxable in his estate by reason of the settlor's retained powers to designate who should enjoy the property and his ability to change the enjoyment through retained power to alter or amend. It was the court's belief that because decedent lacked power to revoke the trust and obtain the corpus and accumulations for his own benefit, then even though the grantor had power to change the beneficiaries or alter enjoyment of the trust property, the accumulations were not taxable to his estate.

We are unable to agree with the Seventh Circuit. The federal estate tax is imposed upon the "transfer" of a decedent's property. Section 2001 Int. Rev. Code of 1954; United States Trust Co. of New York v. Helvering, 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104 (1939). The tax, however, is imposed not upon the incomplete transfer made when the decedent created the trust, but rather upon the completed transfer made when the decedent, by his death, relinquished the powers which caused the trust to be includible in his estate. Comm'r v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949); Estate of Sanford v. Comm'r, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939). Thus, the reservation by a transferor of the power of revocation renders the transfer incomplete until his death, Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929), as does the reservation by a

---

5. Because Michigan Trust relied to a large part on McDermott only the latter will be discussed.

settlor of the power to alter and modify the interests of the beneficiaries. Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933); Estate of Daniel Guggenheim, 40 B.T.A. 181 (1939), aff'd, Guggenheim v. Helvering, 117 F.2d 469 (2d Cir.), cert. denied, 314 U.S. 621, 62 S.Ct. 66, 86 L.Ed. 499 (1941). The valuation of such property for estate tax purposes is made as of the date of death. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940); [6] Fidelity Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782 (1944); Commissioner v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786 (1944).

The relevant sections of the statutes involved herein include in the taxpayer's gross estate property "to the extent of any interest therein of which the decedent has at any time made a transfer." It is clear that in McDermott, as well as in the case before this court, the decedent's interest in the trust property extended to the accumulations as well as to the corpus. The accumulations remained subject to the same control by decedent that caused the corpus to be included in his gross estate. And since the transfer of the trust property was incomplete until decedent, by his death, relinquished the control he held over such property, it follows that the property must be valued at the time of death, when the transfer is complete, and the accumulations included in the valuation. Estate of Daniel Guggenheim, supra; Estate of E. A. Showers, supra; Estate of Cyrus C. Yawkey, supra. See O'Malley v. United States, 220 F.Supp. 30 (N.D.Ill.1963) where McDermott was disapproved but followed "in obedience to the law of *stare decisis* and * * * duty to follow the law of this Circuit." That the trust in McDermott was irrevocable and decedent could gain no financial benefit from the powers he retained is immaterial so long as other powers were retained. E. g., Comm'r v. Estate of Holmes, supra 326 U.S. at 489, 66 S.Ct. 257. In fact, the adoption of the test of whether or not the transfer was revocable to determine whether accumulated income is to be included in the transferor's estate opens the door to the usual perplexities which surround the question of where the tax law draws the line between revocable and irrevocable transfers. See Lowndes & Kramer, Federal Estate and Gift Taxes, 434–35 (1962).[7]

It is obvious from what we have said that we believe the Tax Court was clearly correct in including the accumulations of the Round trusts in the gross estate of the decedent.

Judgment will be entered affirming the decision of the Tax Court.

6. "* * * The taxable event is a transfer *inter vivos*. But the measure of the tax is the value of the transferred property at the time when death brings it into enjoyment." Id. 309 U.S. at 111, 60 S.Ct. at 447.

7. The Seventh Circuit's reliance on Commissioner of Internal Revenue v. Gidwitz' Estate, supra, and Burns v. Commissioner of Internal Revenue, supra, was misplaced. In both of these cases the decedents retained no powers affecting the trusts and the trusts were complete in every respect during their lifetimes. The trusts were held includible in the gross estates of decedents as gifts in contemplation of death. Such gifts are complete *upon the creation of the trusts* and are includible in the transferor's estate only because of his motive in making the gift. United States v. Wells, 283 U.S. 102, 117, 51 S.Ct. 446, 75 L.Ed. 867 (1931). The Tax Court in Frizzell (Burns) emphasized that "the gift of decedent to the trust was completed in every respect during his lifetime and was not affected by his death." It distinguished the trusts in the cases of Fidelity v. Rothensies, supra, and Commissioner v. Field, supra, "where it was held that 'the retention of such a string * * *, subjected the value of the entire corpus to estate tax liability.'" 9 T.C. at 987. In Gidwitz, the circuit court dismissed the Commissioner's reliance on cases dealing with transfers in which the decedent had retained a power: "Such an argument ignores the realities of the two types of transfers." 196 F.2d at 819.