ESTATE OF FRANK E. TINGLEY, T. EVERETT STARRETT, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45229.  Filed May 26, 1954.

*Walter F. Gibbons, Esq.*, for the petitioner.
*James R. McGowan, Esq.*, for the respondent.

#### OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $29,845.15 in estate tax. The issue for decision is whether the petitioner is entitled to a marital deduction and the amount thereof. The facts necessary to the decision of that question have been stipulated and are found as stipulated.

Frank E. Tingley, the decedent, died testate on October 3, 1948, while residing in Rhode Island. He was survived by his wife, Mary, who was then 79 years of age. The estate tax return was filed with the collector of internal revenue for the district of Rhode Island.

The decedent's last will was dated January 30, 1930. The decedent, in the second paragraph of that will, left all of his jewelry, household furnishings, and all other items of tangible personal property connected with his home to Mary, "To have and to hold the same for her absolute use for and during the term of her natural life, with power to use and consume any and all of said tangible personal property hereinbefore referred to in her sole discretion," after which the tangible personal property above mentioned, or such part thereof as might remain, was left absolutely to the decedent's daughter Grace or to her children.

The decedent, in the third paragraph of his will, left all the rest of his estate in trust, naming a friend as trustee and instructing him to divide the property into three equal shares. The trustee was to hold the first share in trust and pay over the net income therefrom to the decedent's wife, Mary, during her natural life, as nearly as possible in equal quarterly installments, and, upon the written request of Mary, was to pay over to her any part or parts of the corpus of the first share for her absolute use,

provided that such right of my wife to call for the transfer or conveyance to her of any part or parts or the whole of the principal of said first share shall cease in case of her legal incapacity from any cause or upon the appointment of a guardian, conservator, or other custodian of her person or estate; and in the event of such legal incapacity, or appointment of any guardian, conservator or other custodian of her person or estate, my said wife or her guardian, conservator or other custodian shall cease to have any further right to the payment to her or such representative of any specified sum or of any part of the income from said first share, but my trustee shall thereupon and thereafter, during her life, have full power and discretion to use and apply such part of the net income of said first share for the benefit of my said wife or may pay such part thereof at any time or from time to time to her or to any such guardian, conservator or other custodian of my wife's person or estate as he may deem in his sole discretion to be wise and proper, and shall accumulate, invest or reinvest any part of said net income not so paid or applied by him as aforesaid and shall have power to add the same to the principal of said first trust or thereafter to disburse it to or for the benefit of my said wife, whether or not previously so added to such principal.

The trustee, after the death of Mary, was to pay over out of any principal of the first share remaining in his hands, $20,000 to the decedent's daughter Marion or her children; and any balance of the first share remaining in the hands of the trustee, with any accumulations thereon, was to be added to the other two shares of the trust. The decedent explained that the payment of $20,000 to Marion or her children was to equalize a devise of the homestead to his daughter Grace after a life estate in his wife, inasmuch as he considered the devise of the homestead to be worth about $20,000.

The value of the tangible personal property passing under the second paragraph of the will was reported in the estate tax return as $447.85. The value of the interest in the residuary estate which passed in trust for the benefit of Mary was $155,516.85, less estate and inheritance taxes allocable thereto.

Mary never became legally incapacitated, and no guardian, conservator, or custodian of her person or estate was ever appointed. She died on August 5, 1952.

Mary created a trust on November 17, 1948, naming as trustee the same person who was trustee under the will of the decedent, and on November 17, 1948, wrote a letter to the trustee under the will of the decedent directing him to pay over to himself as trustee under the trust created that same day by Mary, the portion of the estate of the decedent given to her "under said Second Paragraph, sub-paragraph one of said Frank E. Tingley's will, except the sum of Twenty Thousand Dollars ($20,000.00), said portion of said estate to become a part of the trust fund established by said indenture dated the 17th day of November, 1948."

$155,516.86 was distributed from the estate of the decedent to the "First Share" between November 21 and December 22, 1949, and

$140,025.76 was paid over from that share to the trust created by Mary at various times between November 21, 1949, and June 1, 1950. The "First Share" realized some capital gains. There was retained in the "First Share" $20,000 as directed by Mary.

The Commissioner, in determining the deficiency, increased the net estate shown on the return by $103,628.97, representing the disallowance of a marital deduction claimed thereon. He explained:

Claimed marital deduction is nonallowable since it fails to come within the conditions prescribed by Section 81.47a (c) of Estate Tax Regulations 105, as amended, and 812 (e) of the Internal Revenue Code.

The principal question for decision is whether the estate is entitled to claim the "First Share" as a marital deduction under section 812 (e) (1). The petitioner contends that subparagraph (F) of that provision applies. It is as follows:

(F) Trust with Power of Appointment in Surviving Spouse.—In the case of an interest in property passing from the decedent in trust, if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

(i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

(ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (1), be considered as passing to any person other than the surviving spouse. This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

The parties recognize the separateness of the "First Share" trust and that a power to invade corpus qualified as a power to appoint for the purposes of section 812 (e) (1). They both argue that the power must be exercisable in all events "when viewed as of the date of the decedent's death." They differ upon whether the requirement that it must be exercisable "in all events" is satisfied by the fact that the wife could have taken the entire corpus immediately after the decedent's death or whether the provisions of the will under which she could lose that power kept her from having the power "in all events" within the meaning of section 812 (e) (1) (F). The Commissioner points to the provisions of the will under which Mary could lose her right to have the income distributed to her currently and the right to appoint the corpus, to show that she was not entitled for life to have all of the income from the trust paid to her at least annually and that she did not have the power to appoint the entire corpus free of the trust "in all events" within the meaning of section 812 (e) (1) (F). The petitioner argues that Mary was the substantial owner of the income as

well as of the corpus because there was no impediment at the time of her husband's death to her power to withdraw the corpus. The petitioner states "Although the statutory phrase 'in all events' would appear on the surface to admit of no qualification," it must be interpreted to carry out the intent of Congress and to avoid unjust or absurd consequences. The petitioner argues that a power exercisable by will alone must be distinguished from the power here in question which could have been exercised immediately upon the decedent's death. It points out that any restriction on a power to be exercised by will alone would keep it from being one exercisable in all events, whereas at the time the decedent died there was nothing to prevent his wife from taking down the entire corpus of the trust.

Section 812 (e) was added to the Internal Revenue Code by section 361 of the Revenue Act of 1948 which became a law on April 2, 1948. The will here in question was written many years previously. The decedent made no change in his will to obtain the benefit of the marital deduction although he lived for 5 months after April 2, 1948. He gave his wife the right to take down all, or at least all but $20,000, of the "First Share" trust as long as she did not become legally incapacitated and there was no guardian, conservator, or other custodian for her person or estate appointed. If he had referred to legal incapacity alone, the situation might well be different for any surviving spouse with a power to appoint by will could later lose the power by becoming legally incapable of writing a will exercising the power and Congress may not have intended that such an event by operation of law would deny the marital deduction wherever the power was to be by will. But this testator intentionally made the right to enjoy the income for life and the power to take down the corpus depend upon events not synonymous with legal incapacity. Conditions short of legal incapacity could bring about the appointment of a guardian, conservator, or other custodian of the estate of the widow and the decedent chose to cut off his wife's rights should any such event occur. Thus, he named events under which she could not exercise the power and it was not exercisable "in all events" as required by section 812 (e) (1) (F).

The Commissioner, in Regulations 105, section 81.47a (*c*), as added by T. D. 5699, 1949–1 C. B. 181, 197, states:

The power is not "exercisable in all events," as required by section 812 (e) (1) (F), if it can be terminated during the life of the surviving spouse by any event other than her complete exercise or release thereof.

The Senate Committee on Finance submitted a supplemental report to accompany H. R. 4790, and in that supplemental report, called Senate Report No. 1013 (Part 2), 80th Cong., 2d Sess., the following appears, *inter alia*, at pages 16 and 17, in connection with subparagraph (F):

Under the terms of the trust the surviving spouse must be entitled for her life to all the income from the corpus of the trust * * *. This requirement disqualifies any trust the income of which is required to be accumulated or may, in the discretion of the trustee, be accumulated. * * * An example of a power which does not meet the requirements ["exercisable alone and in all events"] is a power which (unless sooner exercised or released) will terminate on January 1, 1950, or on the date of death of the surviving spouse, whichever occurs first. * * *

The context out of which the above quotations were taken does not weaken their effect for present purposes. The widow's power here, "unless exercised sooner," would terminate if a guardian, conservator, or other custodian of her estate were appointed and thus this case "does not meet the requirements." The provisions of the amendment, together with their legislative history, fail to reveal any cogent reason for interpreting the provisions to allow a martial deduction in a case like this, but, on the contrary, give some indication that Congress had no such intention.

If the provisions and the legislative history of subparagraph (B) have any bearing upon this question, it is unfavorable to the petitioner. The deduction can be lost under that provision if the interest of the surviving spouse will terminate or fail upon the occurrence of an event or contingency. The following quotations are from Senate Report No. 1013 (Part 2), 80th Cong., 2d Sess., page 7: "It is not necessary under such subparagraph (B) that the contingency or event must occur or fail to occur in order to make the interest terminable. * * * Subparagraph (B) is intended to be all encompassing with respect to various kinds of contingencies and conditions. Thus, it is immaterial whether the interest passing to the surviving spouse is considered as a vested interest subject to divestment or as a contingent interest."

The petitioner contends that the surviving wife acquired an absolute interest in houshold furniture and furnishings in the amount of $429.85 and jewelry in the amount of $18 under the second paragraph clause of the will and chapter 566, section 43 of the General Laws of Rhode Island (1938) as a result of which a marital deduction in some amount is proper. The provision of the Rhode Island law to which he refers is:

When a testator shall by his will bequeath the use for life, or for a term of years, of any livestock, provisions, wearing-apparel, or other personal property, which will necessarily be consumed by using, such bequest shall give to the legatee an absolute estate in the property so bequeathed.

The provision of the will refers to "all of my jewelry, and all household furniture, household supplies, rugs, silver, glass, china, automobiles, tools, equipment, accessories and all other items of tangible property located in or upon or customarily used in connection with said dwelling." There is no further description of the property except

that in the estate tax return jewelry was valued at $18 and household furniture and furnishings at $429.85. It is possible that some of the property would "necessarily be consumed by using" and did become the absolute estate of the wife under the provision of the Rhode Island law quoted, but it is also possible that none of it would or did and, under such circumstances, the petitioner has not proven its right to any deduction.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

ARUNDELL, *J.*, dissenting: When viewed as of the date of the decedent's death, the widow had the full right to acquire from the trust for her separate use and ownership the property in question. In fact, within a short time she did take the property and it became the corpus of a new and separate trust set up by her. The mere possiblity that she would be deprived of her right to withdraw the property should she be pronounced legally incompetent does not seem to me a valid reason for denying the marital deduction. Such an unfortunate possibility always exists and would operate effectively to extinguish the right of any surviving spouse to draw down property given with the power to consume or appoint.

The majority apparently recognizes that the right of the surviving spouse alone to exercise the power to consume or appoint "in all events" does not mean that the deduction is lost where the will is silent on the mere possibility of the beneficiary's legal incompetence. Thus, it is recognized that the requirement "in all events" has some limitations and, in my opinion, it must be given a practical interpretation to carry out the broad purpose of Congress in equalizing the impact of Federal estate taxes on decedents in those jurisdictions where local law does not adopt the advantages of the community property States.

I would allow the deduction.