ESTATE OF JULIUS SELLING, DECEASED, FRED M. SELLING AND HANNA SELLING, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46830. Filed May 13, 1955.

*Milton Young, Esq.*, for the petitioners.
*Nathan M. Silverstein, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* We consider, first, the question of whether the cash transfers from decedent to his wife are includible in his gross estate as having been made in contemplation of death. Among the factors to be weighed are the age of decedent at the time of the transfers, the decedent's health as he knew it at or before the time of the transfers, the intervals between the transfers and the decedent's death, and the amount of the property transferred in proportion to the amount of property retained. *Estate of Oliver Johnson*, 10 T. C. 680, 688.

There is nothing in the facts to indicate that the decedent was in any wise apprehensive of death. As said in *United States* v. *Wells*, 283 U. S. 102, "Death must be 'contemplated', that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition."

The size of the gift in proportion to decedent's holdings seems to us to most strongly negate the asserted contemplation of death. By respondent's computation, decedent's gross estate exceeded a quarter of a million dollars. Petitioners place the figure at some $233,000. Annual or even semiannual gifts of $3,000 to one's spouse over a 5-year period from a fund of that size would appear to be wholly inconsistent with the theory that the transfers were in the nature of testamentary dispositions.

The first of the transfers in question was made in January 1944, at which time decedent was 54 years of age, and the last was made in February 1949, several months before his 60th birthday. By modern standards, decedent was a relatively young man at the time of the transfers.

The earliest transfer here involved was made more than 6 years prior to decedent's death, the last being made more than a year before his death.

While decedent had experienced a number of ailments prior to and during the period when the gifts were made, no one of these ailments, nor the combination of all of them, was sufficient to prevent his passing a physical examination on April 29, 1948, in connection with an application for a policy of insurance on his life.

After considering all the factors as they affect the instant case, we have concluded that the transfers were not made in contemplation of death.

The next issue challenges the correctness of respondent's determination that the proceeds of a policy of insurance on decedent's life

are includible in his gross estate under section 811 (g) (2) (A) of the Internal Revenue Code of 1939.[1]

Respondent's determination appears to rest on the theory that decedent transferred cash to his wife to enable her to pay the premiums on the policy of insurance on his life and that all of the premiums therefore were indirectly paid by the decedent. We agree with peti tioners that on the facts before us respondent's position is without merit.

The policy was applied for by decedent's wife on April 29, 1948. more than 4 years after commencement of the series of gifts of $3,000. Moreover, neither the aggregate of $24,000 nor the $3,000 figure of each gift bears any discernible relation to the annual premiums of $404.10. Cf. *Estate of Miran Karagheusian*, 23 T. C. 806.

We are not impressed by the fact that the premiums were paid from the same bank account in which the gifts were deposited. That account was in Hanna's name and we see nothing unusual in the use of one account for both purposes.

*Estate of E. A. Showers*, 14 T. C. 902, cited by respondent, is plainly distinguishable. There the decedent assigned policies to his wife but personally continued to pay premiums for a time and then transferred other property to his wife to enable her to pay the premiums. No such facts exist here.

It follows that the proceeds of the insurance policy here involved are not includible in the gross estate of the decedent.

The last issue is whether a bequest to decedent's wife of rights to insurance renewal commissions qualifies for the marital deduction under section 812 (e) (1) (A) of the Internal Revenue Code of 1939 or whether this bequest is to be treated as a terminable interest expressly nondeductible under section 812 (e) (1) (B).[2]

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

.(g) (2) RECEIVABLE BY OTHER BENEFICIARIES.—To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance \* \* \*

[2] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or con-

Petitioner argues that as the bequest was coupled with the full power in the widow to sell, assign, transfer, or hypothecate the insurance renewal commissions she was vested with what amounts to full ownership notwithstanding a further provision in the will that any remaining commissions not yet due at the time of her death should be paid to decedent's son.

It becomes necessary to examine the New York cases as the nature of the property interest passing under the will must be determined in the light of the applicable state law. The Commissioner's Regulations recognize this fact. Regs. 105, sec. 81.47 (b). Under the laws of the State of New York, the intent of the testator, if ascertainable, is controlling where there is doubt or ambiguity as to the size or nature of an interest passing under a will. See *Leggett* v. *Firth*, 132 N. Y. 7, 29 N. E. 950; *In re Ithaca Trust Co.*, 220 N. Y. 437, 116, N. E. 102; *In re Nugent's Will*, 142 Misc. 594, 255 N. Y. S. 236; *In re Godwin's Estate*, 147 Misc. 114, 264 N. Y. S. 436.

We think it clear, after a study of the New York cases, that the interest in the insurance renewal commissions taken by decedent's wife under his will was not the equivalent of a fee but was at most a life estate with power of disposition which would terminate at her death with the remaining commissions not then due passing to the son. In *Leggett* v. *Firth, supra*, the will provided in part as follows:

tingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

    (i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

    (ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii))—

    (iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For the purposes of this subparagraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

    \*      \*      \*      \*      \*      \*      \*

    (F) Trust With Power of Appointment in Surviving Spouse.—In the case of an interest in property passing from the decedent in trust, if under the terms of the trust the surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the surviving spouse—

    (i) the interest so passing shall, for the purposes of subparagraph (A), be considered as passing to the surviving spouse, and

    (ii) no part of the interest so passing shall, for the purposes of subparagraph (B) (1), be considered as passing to any person other than the surviving spouse.

This subparagraph shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

I also give, devise, and bequeath to my wife, Ellisheba, all the rest and residue of my real estate, but, on her decease, the remainder thereof, if any, I give and devise to my said children * * *

In construing that provision of the will, the Court of Appeals of New York stated as follows:

"But," as thus used, is a word of limitation, and shows that the testator intended that the previous gift, which was apparently absolute, should not remain absolute, but should be limited by that which followed. It indicates a proviso, condition, or qualification, and, in connection with the rest of the sentence, reduces the previous gift by carving out, not an absolute, but a possible, remainder for the children. The nature of the widow's estate is pointed out by the event upon the happening of which the devise of the remainder is to take effect. That event is her death, and, as she was to hold until that event happened, she took a life-estate.

*In re Ithaca Trust Co.*, *supra*, involved the following provision in a codicil:

I hereby will and direct that the one-half (½) of my estate which in said will I gave to my mother, Harriet Simpson, shall be hers absolutely to use up, spend or give away, in any way she sees fit, but I will and direct, in the event there is any of the property hereby willed to her left and undisposed of by her at the time of her death, that sum or amount of property thus willed to her shall belong to my said wife, Mary A. Simpson * * *

The Court of Appeals of New York held that the intention of the testator was to limit the bequest to the mother to a life estate with power to use, spend, or give away the principal in her lifetime without the power of disposition by will. To the same effect see *In re Dinkel's Will*, 133 Misc. 868, 234 N. Y. S. 97; *In re Nugent's Will*, *supra*; *In re Godwin's Estate*, *supra*; and *In re Pfeiffer's Estate*, 163 Misc. 615, 297 N. Y. S. 672.

In support of its position on this point, petitioner relies on *In re Mead's Will*, 115 Misc. 481, 190 N. Y. S. 123, wherein the surrogate was of the opinion that the testator who had unskillfully drawn his own will had not intended any diminution of an apparently absolute bequest. We think this holding is contrary to the general trend of the New York cases construing similar instruments. *In re Davies' Estate*, 242 N. Y. 196, 151 N. E. 205, also cited by petitioner, dealt with a situation arising under section 149 of the New York real property law which provides that a life estate coupled with a power of disposition is equivalent to a fee "in respect to the rights of creditors, purchasers, and incumbrancers * * *." No such rights are here involved.

Our decision on this point is wholly consistent with our opinions in similar cases involving the laws of New York and other jurisdictions.

*Estate of Edward F. Pipe*, 23 T. C. 99, involved the bequest of a life estate to the decedent's wife, coupled with the unrestricted power to dispose of all of the estate in her discretion. The will of the de-

cedent further provided, however, that any property from decedent's estate held by the wife at her death should then pass to certain named legatees. We were of the opinion that under the law of New York the wife's interest was a terminable one and we denied the allowance of the marital deduction.

In *Estate of Frank E. Tingley*, 22 T. C. 402 (Rhode Island), the wife's interest was held to be terminable because of a provision that if she became legally incapacitated or upon the appointment of a guardian, conservator, or other custodian of her person or estate she would lose the power to take down the corpus of a trust. In *Estate of Thomas J. White*, 22 T. C. 641 (New York), the marital deduction was denied as to the proceeds of an insurance policy on the life of the decedent payable in installments because of a further provision that installments becoming due after the death of the wife should be paid to others named by the decedent. See also *Estate of Michael Melamid*, 22 T. C. 966 (New York); and *Estate of Harrison P. Shedd*, 23 T. C. 41 (Arizona).

Petitioners' alternative contention that the bequest to the wife qualifies for the marital deduction as a trust under the provisions of section 812 (e) (1) (F) is grounded on the same argument and relies on the same cases we considered fully and rejected in the case of *Estate of Edward F. Pipe, supra.*

Insofar as the deficiency results from inclusion of the cash gifts and from inclusion of the insurance proceeds, it must be set aside. Respondent correctly disallowed the marital deduction as to the insurance renewal commissions.

*Decision will be entered under Rule 50.*