ESTATE OF DELIA CRAWFORD McGEHEE, DECEASED, MATTHEW RIVES McGEHEE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53447. Filed May 23, 1957.

*John W. Donahoo, Esq.,* for the petitioner.
*J. Elton Mitchiner, Esq.,* for the respondent.

OPINION.

TIETJENS, *Judge:* This proceeding involves a deficiency of $497,815.02 in estate tax. The several issues settled by stipulation will be reflected in the computation under Rule 50. The questions still at issue are: (1) Whether the value of stock dividends paid on stock between the time of its transfer in contemplation of death and the death of the transferor is includible in decedent's gross estate under section 811 (c), Internal Revenue Code of 1939, and (2) whether a certain devise and bequest by the decedent results in a marital deduction under section 812 (e).

The proceeding was submitted on a stipulation of facts. The facts set forth in the stipulation are incorporated herein by reference as our findings of fact and are substantially as follows.

Delia Crawford McGehee died testate on February 6, 1950, while a resident of Jacksonville, Florida. The estate tax return was filed with the director of internal revenue at Jacksonville, Florida.

No cash or property dividends have ever been issued by the Jacksonville Paper Company, a Florida corporation, hereinafter referred to as the corporation. It has followed a policy of capitalizing its earnings and issuing stock dividends. In each of the years 1941 to 1949, inclusive, the corporation capitalized its current earnings and issued a stock dividend to its stockholders.

In 1947, 1948, and 1949, the decedent transferred a total of 774 shares of stock of the corporation in contemplation of death. In 1948, the corporation declared a stock dividend on its outstanding stock and distributed 32 shares on the stock represented by the 1947 gifts. In 1949, it declared a like dividend and distributed 34 shares on the stock represented by the 1947 gifts and 20 shares on the stock transferred as gifts in 1948. Each of the shares of stock, including the stock transferred, had a value of $85 per share at the time of decedent's death. The respondent included in the gross estate the value of the original stock and the shares distributed as dividends as transfers made in contemplation of death.

The parties stipulate that the issue thus arising is as follows:

Are stock dividends, which represent a capitalization of current earnings, and which are declared and distributed by Jacksonville Paper Company on stock which was transferred by decedent in contemplation of death to be included in decedent's gross estate under the provision of Section 811 (c) of the Internal Revenue Code?

In her last will and testament, which was executed in 1938 and duly admitted to probate in the County Judge's Court of Duval County, Florida, the decedent devised and bequeathed all of her property to her husband—

in fee simple, and with full power to dispose of the same and to use the income and corpus thereof in such manner as he may determine, without restriction or restraint. Provided, however, that if my said husband shall, at the time of his death, own or be possessed of or entitled to any of my said property, then upon his death I give, devise and bequeath one-half of such residue and remainder of my property not disposed of by my husband during his lifetime to my brothers and sisters, or in the event any of my brothers or sisters shall pre-decease me, then the share of such brother or sister shall go to the heirs-at-law of such deceased brother or sister. The other half of such property, I give, devise and bequeath to the brothers of my said husband and to the heirs-at-law of any deceased brother of my said husband, such heirs-at-law to take the share to which their parent would have been entitled if then in life.

The decedent left no children surviving her.

There has been no judicial construction of the decedent's will by any Florida court and no disclaimer has been filed or asserted by the surviving spouse. All of the decedent's property passed in accordance with the terms of the will. The executor claimed a marital deduction of $115,117.63 in the estate tax return. Respondent disallowed the deduction under the provisions of section 812 (e) (1) (B).

The parties stipulate that the issue thus arising is:

Did the devise and bequest by the decedent to her surviving spouse in her will qualify for the allowance of the marital deduction for estate tax purposes.

The parties agree that the original transfers of a total of 774 shares of stock in 1947, 1948, and 1949 were made in contemplation of death and that each of such shares and the shares subsequently issued thereon as stock dividends had a value at the time of decedent's death of $85 per share. The only difference between them under the first issue is whether the agreed value of the stock dividends issued on account of such original transfers is includible in gross estate as transfers made in contemplation of death within the meaning of section 811 (c) (1) (A), Internal Revenue Code of 1939.[1]

The parties cite no American case directly in point,[2] we have found none, and we start from the standpoint of case law on an uncharted course. We look to the statute partly set out in the footnote for guidance. It provides that the value of the gross estate of the decedent is to include the value of any of his personal property "to the extent of any interest therein of which the decedent has at any time made a transfer * * * in contemplation of death." Narrowly, the problem here is to determine just what was the property which the decedent transferred—was it simply the shares of stock originally transferred—or, was it the proportional share in the entire assets, business, and affairs of the corporation which those certificates represented? If the latter, then the value of the gross estate must include the value of the stock dividends as well as the original shares.

At the time of transfer each share of stock represented to the decedent a corresponding interest in the corporation proportionate to the whole of the corporate business. Stock dividends on those shares would in no way change the stockholder's interest in the corporation.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

    \*        \*        \*        \*        \*        \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

    (1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

        (A) in contemplation of his death; * * *

[2] An English case contrary to the result reached here is cited, *Attorney General* v. *Oldham*, [1940] 1 K. B. 599, affd. 3 All E. R. 450. This decision was criticized in 54 Harv. L. Rev. 512.

And it would make no difference whether the stock dividend represented a "capitalization of earnings" or a "stock split." (The petitioner here seeks to draw such a distinction.) *Eisner* v. *Macomber*, 252 U. S. 189. True it is that after the stock dividend each share represented a smaller proportionate interest, but, in toto, they still represented the original interest in the corporation which the decedent owned and had transferred. That interest had simply been further splintered or atomized. In no way had it been increased or diminished and if we look to its value as of the time of death, the value of all the shares represents the value of the interest transferred.

So viewed, the Commissioner properly valued the decedent's gross estate by including therein the value of the shares declared as stock dividends as well as the shares originally transferred. We find nothing in the cases cited by petitioner which would compel a different conclusion. *Estate of James E. Frizzell*, 9 T. C. 979, affirmed sub nom. *Burns* v. *Commissioner*, 177 F. 2d 739, was concerned with stock transferred in trust in contemplation of death with directions to accumulate undistributed income. The trustee invested undistributed income in stocks and bonds which, with some undistributed cash, was held by the trustee when the decedent died. We held that the value of the accumulations of the trust was not to be included in gross estate, and in affirming, the Court of Appeals said, in part, that—

The tax statute in question should be strictly construed in favor of the taxpayer, and since it does not expressly provide for the *inclusion of income derived from the transferred property* in the gross estate, it is not our prerogative, by judicial fiat, to give it that effect. * * * [Emphasis supplied.]

Our case, of course, does not purport to provide for the "inclusion of income derived from the transferred property" in the gross estate. Stock dividends are not income. *Eisner* v. *Macomber, supra.*

In the other cases cited by petitioner, *Humphrey's Estate* v. *Commissioner*, 162 F. 2d 1 (C. A. 5) ; *Commissioner* v. *Gidwitz' Estate*, 196 F. 2d 813 (C. A. 7), affirming 14 T. C. 1263; and *Commissioner* v. *McDermott's Estate*, 222 F. 2d 665, the touchstone seems to be that "[i]rrespective of all other considerations, *property to be includible must have been transferred.*" (Emphasis supplied.) *Commissioner* v. *McDermott's Estate, supra.* And that carries us back to the question originally posed. Was the property transferred by decedent the specific shares of stock, or was it the proportionate interest in the corporation, its business, and its assets which the stock certificates evidenced? We think it was the latter, as we have above indicated. If it was, then the property transferred is to be valued under the statute "at the time of death" and, of necessity, would include the value of the stock dividends. In other words, the gross estate would encompass the value

of the proportionate interest in the corporation represented by the shares originally transferred just as if that interest had been held by the decedent up to the time of death; and this in turn would include the value of the shares received as stock dividends.

Though the case is not directly in point, this view finds support in the language used by the Court of Appeals in *Igleheart* v. *Commissioner*, 77 F. 2d 704, 711, affirming 28 B. T. A. 888 (1933), where the court said:

> The applicable statute (section 302 (c) of Revenue Act of 1926 (26 USCA § 1094 (c) provides that there shall be included in the gross estate of the decedent the value at the time of his death of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * his death. * * *" The thing taxed is the transmission of property from the dead to the living. For the purposes of the tax, *property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death.* [Emphasis supplied.]

Whether or not the petitioner is entitled to a marital deduction under the second issue involves application of the provisions of section 812 (e) of the Internal Revenue Code of 1939.[3]

The petitioner contends that the surviving spouse had a general power of appointment over the entire estate of the decedent, under section 811 (f), to use, sell, and dispose of the property during his lifetime. This alleged power, he asserts, makes the case fall within subsection (e) (1) (A) to the exclusion of the applicability of subsection (e) (1) (B), under the provisions of which the respondent disallowed the deduction. The substance of the contention thus made is that we should treat the surviving spouse as the owner of the entire estate for tax purposes. Petitioner is in agreement with a statement made in *Estate of Edward F. Pipe*, 23 T. C. 99, affd. 241 F. 2d 210 (C. A. 2), to the effect that the purpose, in general, of sub-

---

[3] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ; * * *

section (e) (1) (B) was to confine the marital deduction to situations in which the transfer was such that the property passing to the surviving spouse would be included in the survivor's gross estate at death, so as not to escape taxation the second time.

The position of the parties under the issue requires a determination of the quality and character of the estate passing to the surviving spouse under decedent's will. Absent a construction of the will by a Florida court, we must resort to judicial interpretations of like or similar wills. Neither party asserts that we must look beyond decisions of Florida courts to decide the nature of the estate bequeathed to the surviving spouse under the will. See *Estate of Harriet C. Evilsizor*, 27 T. C. 710.

The similarity of the will involved in *Roberts* v. *Mosely*, 100 Fla. 267, 129 So. 835, to the one here, is admitted by petitioner, and respondent regards it as controlling. The second paragraph of the will of the decedent in that case appointed his wife executrix of his estate, with power to—

manage, control, mortgage, sell and convey in fee simple, all of my estate as and when she may consider for the best interest of herself and of my estate.

The third paragraph passed to the testator's wife—

in fee simple, all of my property, real, personal, and mixed, of which I shall die seized and possessed, or to which I may be entitled at the time of my death.

The fourth paragraph provided that if the wife "should own, possess or be entitled to any of my said property at the time of her death," a designated sister was to receive in fee simple, one-half "of my said property, owned by my said wife, at the time of her death," and the remainder was to pass in equal shares to the half-sisters of the wife.

The suit was brought for an interpretation of the will. Mosely contended that paragraph three of the will gave the wife fee simple title to all of the property and that paragraphs four and five were void. Roberts contended that the wife received no more than a life estate under the will, because of the limitations in the fourth and fifth paragraphs on paragraph three.

The court held that the estate passing to the wife, with power of disposition in fee, was limited by the other provisions so that the remainder over descended to the beneficiaries named in paragraph four. In so holding, the court said:

We think the better rule to be that the devise of an estate in fee simple may be limited by a subsequent valid provision that the estate shall go over to others upon the happening of a named contingency or that it may be restricted by subsequent provisions in the will so that in effect it becomes an estate for life as to the remainder. * * *

We do not discuss the effect of a life estate with power of disposition. Suffice it to say that the decided weight of authority is to the effect that, where an estate for life with remainder over, is given, with power of disposi-

tion in fee of the remainder annexed, the limitation for the life of the first taker will control, and the life estate will not be enlarged to a fee, notwithstanding the power of the life tenant in good faith to dispose of the fee and pass his title thereto. * * *

Respondent interprets the opinion of the State court as concluding that the wife there took only a life estate under her husband's will and asserts that the surviving spouse here acquired a like estate. So viewing the opinion and the will of the decedent in this proceeding, he says that we should sustain his determination, under *Estate of Michael Melamid*, 22 T. C. 966; *Estate of Edward F. Pipe, supra;* and *Estate of Julius Selling*, 24 T. C. 191. Aside from what is inferable from his contention, petitioner does not give us the benefit of his judgment of the court's opinion on the character of the estate acquired by the wife.

We construe the court's opinion to mean that the wife acquired a life estate with power of disposition in fee during her lifetime and that the limitations prevented the enlargement of such life estate to a fee.

The will involved here is the same in all material respects. It passed all of the estate to the surviving spouse "in fee simple" without restriction on enjoyment of income therefrom or disposition of corpus, except for the provision that if the husband owned or was entitled to any of the property at the time of his death, such remainder was to go to other specified individuals. Regardless of the breadth of his right of enjoyment and disposition of the property in fee during his lifetime, he did not receive an absolute fee or an estate of inheritance under the will. *Green* v. *Barrow*, 150 Fla. 594, 8 So. 2d 283; *Sanderson* v. *Sanderson*, 70 So. 2d 364 (Fla.).

Whether a "terminable interest" passed under the will must be judged as of the time of the decedent's death. The surviving spouse had only a life estate in the remainder. The quantum of the estate of the remaindermen was obviously indeterminable immediately after the decedent's death. Had the surviving spouse died before consuming any part of the estate left to him, the property would have passed in its entirety to the remaindermen named in the decedent's will, without the exercise of any power by the husband, leaving nothing out of decedent's estate for inclusion in the estate of the first taker. The statute, as we have pointed out, was designed to prevent the property from escaping tax the second time. We cannot presume that nothing will pass to the remaindermen upon the death of the surviving husband. To allow the deduction here claimed would result in avoidance of tax on whatever remainder property the husband owned or was entitled to at the time of his death. His interest would then terminate as to such indeterminable remainder property.

Petitioner also contends that the surviving spouse held the property as a constructive trustee under section 812 (e) (1) (F). He is content to submit the point under the argument made by the petitioner in *Estate of Edward F. Pipe, supra.* The theory was regarded as inconsistent with a contention that the surviving spouse took the equivalent of a fee, the chief contention being made here. We adhere to the conclusion reached there that if such a type of "trust" was created, it was not included in the marital deduction provisions of the statute. See *Estate of Louis B. Hoffenberg,* 22 T. C. 1185.

We think no error was committed by respondent in disallowing the deduction under subsection (e) (1) (B), and so hold.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

Van Fossan, *J.,* dissenting: Being unable to agree with the prevailing Opinion on the first point, I respectfully dissent.

Where an inter vivos gift is complete when made, as distinguished from transfers made to take effect in possession or enjoyment at or after death, only the value of the property actually transferred by the decedent is includible in the gross estate. The taxable event here was the completed inter vivos gifts of stock by the decedent. "Irrespective of all other considerations, property to be includible must have been transferred." *Commissioner* v. *McDermott's Estate,* 222 F. 2d 665. The stock dividends were not transferred directly or indirectly by the decedent since they were paid after the completed gifts were made, and then out of current earnings.

"The dominant purpose [of the statute] is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax." *United States* v. *Wells,* 283 U. S. 102. The interest which the decedent had as a stockholder in the 774 shares transferred by her was a capital interest evidenced by the stock certificates. *Eisner* v. *Macomber,* 252 U. S. 189. The transferees acquired that interest under the completed inter vivos gifts and they alone were entitled to future accretions resulting from stock dividends and other distributions on the stock. Such rights were at no time after the transfers subject to disposition by the transferor.

Respondent says that failure to sustain his determination here would be tantamount to "opening the door and throwing the key away" to section 811 (c). So be it! If Congress has left the door open, it is not our function to close it. *Burns* v. *Commissioner,* 177 F. 2d 739.

Bruce, *J.,* agrees with this dissent.

WITHEY, *J.*, dissenting: I must dissent with respect to the result reached by the majority on the first issue. It is clear and I agree that the decision should turn primarily upon the identity of the property which was transferred as a gift and the stock dividends which are here sought to be included in the decedent's estate. On the principle enunciated in *Eisner* v. *Macomber*, 252 U. S. 189, that shares of stock are merely evidence of a proportionate interest in corporate assets, the majority concludes we are not here involved with corporate stock as property within the meaning of section 811 (c) but rather with a proportionate share of a corporation which remained unchanged in proportion upon the issuance of stock dividends; that therefore not only an original gift of stock in contemplation of death but stock dividends issued thereon are includible in the decedent's estate for Federal estate tax purposes.

*Eisner* v. *Macomber* was an income tax case and the principle there propounded has no application to the issue here in controversy. There the issue was simply whether stock dividends are income while here the question is whether a stock dividend is an item of property separate and distinct from the stock with respect to which it was issued.

In my view the separateness of the two categories of property is amply demonstrated by this record. That neither the stock dividends nor the assets upon which they were issued were in existence at the time of the gift in contemplation of death is obvious. (Some portion of the profits upon which the first year dividends were based may have been in existence.) It follows they were not the property transferred and cannot be included in the decedent's estate under section 811 (c). See *Commissioner* v. *McDermott's Estate*, 222 F. 2d 665. That the stock dividends are distinct from the shares of stock transferred as a gift is evident too from the fact that they represent new capital investment or plowback in the corporate business. It is a stipulated fact here that the stock dividends were issued upon "current" earnings. Such assets, had they been available as cash dividends, necessarily could not have been the subject of a gift by the decedent. Of some significance is the fact that after issuance of the stock dividends the stipulated value of the stock transferred as a gift was not lessened and the new stock was of equal value which indicates an investment of new and additional capital under these facts.

*Burns* v. *Commissioner*, 177 F. 2d 739, admonishes us that "[t]he tax statute in question should be strictly construed in favor of the taxpayer." The majority holding here, by including in the gross estate shares of stock not expressly required by the statute to be so included, construes the statute strictly against the taxpayer.

While *Eisner* v. *Macomber*, *supra*, has long been a landmark in income tax law, it has not until now been considered a directional light in the interpretation of estate tax law. The case arose under section 2 (a) of the Revenue Act of September 8, 1916. As stated by the Supreme Court, the question before it in the case was:

> This case presents the question whether, by virtue of the Sixteenth Amendment, Congress has the power to tax, as income of the stockholder and without apportionment, a stock dividend made lawfully and in good faith against profits accumulated by the corporation since March 1, 1913.

The Court's holding on the question presented was that neither under the Sixteenth Amendment nor otherwise did Congress have power to tax without apportionment a true stock dividend made lawfully and in good faith or the accumulated profits behind it, *"as income of the stockholder."* (Emphasis supplied.) Obviously the question there involved is far removed from the estate tax question confronting us here.

However, since the majority rests its holding on *Eisner* v. *Macomber*, it can well be urged that the case supports an affirmative answer to the real question presented here. In that case, the Court said (p. 212):

> It is said that a stockholder may sell the new shares acquired in the stock dividend; and so he may, if he can find a buyer. It is equally true that if he does sell, and in doing so realizes a profit, such profit, like any other, is income, and so far as it may have arisen since the Sixteenth Amendment is taxable by Congress without apportionment. The same would be true were he to sell some of his original shares at a profit. * * *

The foregoing is a clear recognition by the Court that the shares received as a stock dividend are a separate and distinct item of property from the shares with respect to which they were distributed.

The decedent made inter vivos gifts of 774 shares of stock in Jacksonville Paper Company. The statute requires that the value of only that number of shares, and no more, be included in her gross estate.

MULRONEY, *J.*, agrees with this dissent.