Agnes J. TUCK, as Executrix of the Estate of George A. Tuck, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 36926.

United States District Court N. D. California, S. D.

May 4, 1959.

Freed & Freed, San Francisco, Cal., for plaintiff.

Robert H. Schnacke, U. S. Atty., John Kaplan, Asst. U. S. Atty., San Francisco, Cal., for defendant.

ROCHE, District Judge.

This is a taxpayer's suit for refund of estate taxes paid by the estate of George A. Tuck, brought under applicable provisions of 28 U.S.C.A. § 1346(a) (1).

George A. Tuck, decedent, became a stockholder in Atlas Heating and Ventilating Company ("Atlas"), a California corporation, in 1909. As shown by minutes of a stockholders' meeting on May 2, 1910 George A. Tuck owned a

one-third interest in Atlas, the remaining two-thirds interests being owned by R. N. Osborn and F. H. Green. R. N. Osborn resigned as a member of the Atlas board of directors in July of 1916 leaving Tuck and Green as majority stockholders. These two men, Tuck and Green, as president and secretary-treasurer, respectively, remained in control of Atlas until 1950 when Tuck acquired the Green interest through sale.

Agnes J. Tuck, wife of George A. Tuck and plaintiff in this action, alleges that minutes of an Atlas stockholders' meeting on February 4, 1919 show that George A. Tuck owned only 1 share of Atlas stock; that sometime prior to February 4, 1919 he had given plaintiff 4,416 shares of Atlas stock, and that these shares were received from decedent as a gift.

Plaintiff further alleges that from outside sources she increased her holdings in Atlas stock, and on July 16, 1921 she owned 4,935 shares. A meeting of Atlas stockholders was held on July 16, 1921 and a stock dividend of six shares on each share outstanding was declared. Plaintiff, therefore, received 29,610 (6 x 4,935) shares of Atlas stock bringing her total Atlas holdings to 34,545 shares of stock. On July 17, 1922 plaintiff transferred 34,545 shares in Atlas stock to decedent. These shares were eventually placed in joint tenancy.

George A. Tuck died August 22, 1952. Plaintiff is the duly appointed and acting executrix of his estate. As executrix of decedent's estate plaintiff filed with the District Director of Internal Revenue at San Francisco, California, form 706, Estate Tax Return for the Estate of George A. Tuck, and on or about November 17, 1953 paid the tax shown thereon in the amount of $45,-874.70.

Thereafter defendant United States of America, through its Commissioner of Internal Revenue, assessed against the estate of George A. Tuck an additional tax of $24,336.48 plus interest in the amount of $3,754.57. On October 19, 1956 plaintiff paid the additional tax and interest amounting to $28,091.05.

On July 25, 1957 plaintiff filed form 843 with the District Director of Internal Revenue for refund of the $28,091.05 tax assessment paid in 1957, and $3,000 of the taxes paid by her in 1953. This claim was not allowed, and on December 18, 1957, plaintiff filed this action praying for judgment against defendant in the amount of $31,091.05 plus interest.

Three questions are presented by plaintiff's claim for refund of taxes paid the District Director of Internal Revenue. (1) Was the stock dividend declared by Atlas on July 16, 1921 includable in the gross estate of George A. Tuck? (2) Were the fair market values placed on shares of stock in two California corporations by the District Director of Internal Revenue and held by the Tuck family at George A. Tuck's death too high? (3) Should a $6,399.65 cash contribution made to Atlas by the Tuck trust on April 13, 1931 be included in decedent's gross estate?

### The Stock Dividend Issue

It is stipulated that 4,416 shares of Atlas stock owned by plaintiff on July 16, 1921 were a gift to plaintiff by George A. Tuck, and that these shares were properly includable in decedent's gross estate. On that date, July 16, 1921, Atlas declared a stock dividend, and for each share of Atlas stock outstanding stockholders were given 6 shares. Plaintiff, in addition to the 4,416 shares given her by George A. Tuck, had acquired 519 shares from outside sources; thus, she received 29,610 shares of Atlas stock as a result of the stock dividend.

Plaintiff contends that the shares of stock which she received as a result of the stock dividend became her personal property; that on July 17, 1922, one year and one day after the stock dividend declaration, she gave back to George A. Tuck, not only the 4,416 shares of Atlas stock which he had given her, but the shares she had received as a stock dividend as well; therefore, plaintiff con-

tends that the shares resulting from the stock dividend should not be included in George A. Tuck's gross estate.

The statute here applicable provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(e) Joint interests

"(1) To the extent of the interest therein held as joint tenants by the decedent and any other person, \* \* \* except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: \* \* \*." 26 U.S.C.A. (Internal Revenue Code 1939) § 811(e) (1).

Plaintiff cites six cases in support of her position on the stock dividend issue. Commissioner of Internal Revenue v. McDermott's Estate, 7 Cir., 1955, 222 F.2d 665, 55 A.L.R.2d 410; Burns v. Commissioner of Internal Revenue, 5 Cir., 1949, 177 F.2d 739; Humphrey's Estate v. Commissioner of Internal Revenue, 5 Cir., 1947, 162 F.2d 1; Harvey v. United States, 7 Cir., 1950, 185 F.2d 463; Commissioner of Internal Revenue v. Gidwitz' Estate, 7 Cir., 1952, 196 F.2d 813, and McGehee v. Commissioner of Internal Revenue, 5 Cir., 1958, 260 F.2d 818, 820. In each of plaintiff's cases there had been a gift or transfer of property in contemplation of death; in three of these cases trusts had been established. The rule of law is clearly enunciated in these cases that only the corpus of a trust and not the income therefrom is includable in a decedent's gross estate. There was in McGehee v. Commissioner, supra, as in the instant case a gift of shares of stock and after the gift, stock dividends declared, and since plaintiff relies most heavily on this case it will bear careful analysis.

In McGehee v. Commissioner decedent made gifts in 1947, 1948, and 1949 of stock in a paper company totaling 774 shares. In 1948 and 1949 the paper company declared stock dividends. There it was conceded that the transfers of 774 shares of stock should be included in decedent's gross estate. The Commissioner, however, asserted and the Tax Court held that shares of stock issued as stock dividends were also to be included. 28 T.C. 412. The Court of Appeals for the Fifth Circuit, in reversing the Tax Court said:

"We conclude that of the stock of Jacksonville Paper Company, only 774 shares should have been included in the gross estate of the decedent."

Plaintiff contends that the holding in that case is decisive of the question in the instant case; that since the shares of stock resulting from issuance of stock dividends in that case were not includable in the gross estate of decedent, the shares of stock resulting from issuance of Atlas stock dividends should not be included in the gross estate of decedent in the instant case.

It is defendant's contention that the factual situation in McGehee v. Commissioner is materially different from the facts in the instant case. In McGehee v. Commissioner the Jacksonville Paper Company had had a nine year history of *annual* stock dividends; in its 13 year history to 1921 Atlas declared only *one* stock dividend. Again, in McGehee v. Commissioner, the stock dividends represented a capitalization of *current earnings*; in the instant case there is no showing that the $76,151.08, which was the excess of net worth over paid-in capital in Atlas and which formed the base for issuance of the stock dividend, represented current earnings. In other words, plaintiff would have the court hold that these earnings which are shown to have occurred in a thirteen-year period were actually all made in a period of less than three years between the gift and the stock dividend.

It is true that in McGehee v. Commissioner, with a 9-year history of *annual* stock dividends capitalizing *current earnings*, the Court of Appeals held the stock dividends not includable in the gross estate of the decedent, but the court said at page 820 of 260 F.2d:

"Cases involving stock splits or stock dividends capitalizing corporate profits *earned prior* to the transfer might require different treatment." (Emphasis added.)

The court read the briefs submitted by counsel, has carefully reviewed plaintiff's exhibits 4 and 5 (the minute book and share record book of Atlas), and listened to oral argument by counsel. The court finds that the stock dividend issued by Atlas capitalized corporate profits earned prior to the transfer of Atlas shares from decedent to plaintiff, and that the stock dividend was includable in decedent George A. Tuck's gross estate.

### The Share Valuation Issue

The second issue on which plaintiff grounds her claim for refund of taxes paid is that the determination by the District Director of Internal Revenue of the fair market values of shares of stock in two California corporations and held by the Tuck family on August 22, 1952 were too high.

When George A. Tuck died on August 22, 1952 his family owned and controlled two California corporations, Atlas and International Sales Corporation ("International"). Tuck became one of three major stockholders in Atlas in 1910. Thereafter, in 1916, upon the resignation of R. N. Osborn, Tuck and F. H. Green, acquiring periodically equal numbers of shares, became the two majority stockholders in Atlas. Similarly, these two men became the two majority stockholders in International. It is stipulated that in 1950 the Tuck family owned 50% of the stock in each corporation, and the Green family owned the remaining 50% of the stock in each corporation. It is further stipulated that the Green family sold its interests in Atlas and International to the Tuck family in 1950.

Prior to the 1950 sale Mr. Robert M. Harkness, a securities analyst, made appraisals of the assets of Atlas and International. These appraisals, in evidence as defendant's exhibit No. A, were comprehensive and detailed. From these appraisals Mr. Harkness determined that Atlas was worth $800,000, and International worth $1,225,000. Using these figures as a base the Tuck family paid the Green family $8.50 per share for its Atlas stock and $9.75 per share for its International stock. In 1950, therefore, the Tuck family became the sole owners of the outstanding shares of stock in both corporations.

Plaintiff, in preparation for filing George A. Tuck's estate tax return, obtained appraisals for the shares of stock in Atlas and International from Mr. Robert M. Harkness, and from J. Barth and Company, securities brokers. On the basis of these appraisals, in evidence as portions of plaintiff's exhibit No. 2, it was established that the fair market value for Atlas stock, as of the date of death, August 22, 1952, was $5.75 per share, and $9 per share for International. Using these share valuations plaintiff filed the estate tax return here in question, and paid taxes shown thereon.

Defendant's audit of the return resulted in assessment of a tax deficiency since it was determined that the fair market value of Atlas stock on August 22, 1952 was $8.50 per share, and that of International on the same date $9.75 per share.

In support of her contentions that the fair market valuations shown on the estate tax return were correct, plaintiff called two expert witnesses to testify; Mr. Robert M. Harkness, and Mr. Merl McHenry, general partner of J. Barth and Company.

Mr. Harkness testified that his original appraisals of the assets of the two companies in 1950 which resulted in payment of $8.50 per share for Atlas stock

and $9.75 per share for International stock by the Tuck family to the Green family was not applicable to the per share valuations made in 1952 by J. Barth and Company. He testified that an air of bitterness existed between the two families at the time of sale, and that this factor weighed quite heavily in the establishment of the 1950 sale price. He testified that he concurred in the fair market valuations established by the J. Barth and Company appraisals.

Mr. McHenry testified that fair market valuations of stocks such as Atlas and International which were not listed on the stock exchanges are governed by many considerations: (1) strength and integrity of the management, (2) prospects, (3) earnings and dividends, and (4) book values of the companies. He testified that his company took the earnings records for Atlas and International for the 5-year period 1947 to 1951, compared these records with the records of comparable companies whose stocks were listed on the stock exchanges, and that these comparisons adequately supported their findings that the fair market valu-

ation of Atlas stock on August 22, 1952 was $5.75 per share and that of International $9 per share.

Defendant contends that fair market valuations of Atlas and International stock on August 22, 1952 were $8.50 and $9.75 per share, respectively. In support of these contentions defendant called Mr. Martin Hendricks to testify. Mr. Hendricks was the estate tax examiner in the Internal Revenue Service whose audit of George A. Tuck's estate tax return resulted in the deficiency tax assessment.

Mr. Hendricks testified that as a result of his audit of the estate tax return he was of the opinion that the fair market value of Atlas stock should have been $11 per share, and that of International $14 per share. He testified that when the Tuck return was audited he studied the appraisals of Atlas and International assets submitted by J. Barth and Company, and that these appraisals listed net income and earnings per share for the two corporations for the 5-year period prior to 1952 as follows:

|  | Atlas | | International | |
| --- | --- | --- | --- | --- |
| Year | Net Income | Earnings Per Share | Net Income | Earnings Per Share |
| 1947 | $132,561.28 | $2.75 | $201,330.85 | $3.09 |
| 1948 | 162,440.87 | 3.37 | 216,054.92 | 3.31 |
| 1949 | 19,354.85 | .40 | 150,772.70 | 2.31 |
| 1950 | 52,449.27 | 1.08 | 312,543.80 | 4.80 |
| 1951 | 138,019.25 | 2.86 | 194,130.18 | 2.98 |

Mr. Hendricks testified further that even though, in his opinion, the net income and earnings per share figures for Atlas and International would substantiate his fair market valuations of $11.00 and $14.00, he recommended that defendant accept the lower fair market valuations used to consummate the sale of Atlas and International stock in 1950. At this sale the price of Atlas stock was set at $8.50 per share and that of International at $9.75 per share. Defendant

accepted these fair market valuations, and contends that the figures shown above for the 5-year period prior to 1952, and comparisons of Atlas and International with comparable companies substantiate this contention.

█ The court finds that the fair market valuations placed on shares of Atlas and International stock by the District Director of Internal Revenue, as of August 22, 1952, were not too high,

and approves their fair market value at $8.50 and $9.75 per share, respectively.

### The Capital Contribution Issue

The third issue raised by plaintiff in her claim for refund of taxes paid is whether $6,399.65, being one-half of the interest attributable to a joint tenancy between plaintiff and decedent in a certain cash contribution to the capital of Atlas on April 13, 1931, is includable in the gross estate of decedent. It is stipulated that the Tuck trust contributed $25,598.59 to the capital of Atlas on April 13, 1931.

When plaintiff filed George A. Tuck's estate tax return she deducted $6,399.65 from the gross estate of decedent. Plaintiff made this deduction claiming that she had made contributions equal to decedent's contributions in the establishment of the Tuck trust. Plaintiff contends, therefore, that the $6,399.65 item should be excluded from decedent's gross estate since it never "originally belonged" to decedent.

Defendant did not allow this deduction and included it in decedent's gross estate. It is defendant's contention that the $6,399.65, which plaintiff asserts she contributed to the establishment of the Tuck trust, was originally received from decedent without "adequate consideration in money or money's worth."

It was incumbent upon plaintiff to prove to the court that this $6,399.65 did not originally belong to Mr. Tuck. Plaintiff has not met this burden of proof, and the court finds that this item was properly includable in the gross estate of decedent.

The three issues raised by plaintiff's suit for refund of estate taxes paid and their determination by the court follows:

(1) The stock dividend issue: The court finds that the stock dividend was includable in the gross estate of decedent, George A. Tuck.

(2) The share valuation issue: The court finds that the fair market valuations set by the District Director of Internal Revenue at $8.50 per share for Atlas and $9.75 per share for International as of August 22, 1952 were not too high, and the court approves these valuations.

(3) The capital contribution issue: The court finds that the $6,399.65 cash contribution should have been included in decedent's gross estate.

Plaintiff has failed to carry the burden of proof by a preponderance of the evidence. Judgment, therefore, will be for the defendant, United States of America.

Defendant, in accordance with Rule 21, U.S.Dist.Ct.Rules, N.D.Cal., West's Ann.Code, shall prepare a formal judgment, and findings of fact and conclusions of law in accordance with this opinion.