Josephine F. BENNETT, etc., and Harris Trust and Savings Bank, etc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 53 C 739.

United States District Court N. D. Illinois, E. D.

April 7, 1960.

Harry D. Orr, Jr., and Mark Crane, of Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., for plaintiffs.

R. Tieken, U. S. Atty., and Harvey M. Silets, Asst. U. S. Atty., Chicago, Ill., for defendant.

PERRY, District Judge.

In this action, plaintiffs, as executors of the last will and testament of Ben Alexander, deceased, seek a refund of estate taxes paid by the estate of said decedent.

The parties hereto have entered into a written and agreed stipulation of facts which together with exhibits thereto, was filed herein. In that stipulation the parties agreed "that the following facts may be taken as true and correct and shall be deemed proved, subject to objection by either party as to the competency, materiality or relevancy thereof, with the right reserved to either party to introduce other evidence not inconsistent with the facts herein stated." No objections were made by either of the parties and no other evidence has been introduced. Oral argument of counsel was heard in open court and briefs have been submitted by counsel for both parties.

The aforementioned stipulation of facts reads, in part, as follows:

"4. Ben Alexander died on July 6, 1944, a resident of Chicago, Il-

linois. On October 3, 1945, a federal estate tax return was filed for his estate showing a gross estate of $2,071,805.62, claiming deductions exclusive of the specific exemption in the sum of $222,646.33, resulting in a net estate of $1,749,159.29 for tax imposed by the Revenue Act of 1926 and a net estate of $1,789,159.29 for tax imposed by the Revenue Act of 1932, as amended, and a total net tax of $569,582.21, after claiming credit for state inheritance taxes in the sum of $88,739.47. The returned tax of $569,582.21 was paid on October 3, 1945 to the Collector of Internal Revenue, Nigel D. Campbell.

"5. Subsequently, a tentative audit and review of the return was made by the Internal Revenue Agent in Charge, Chicago. This audit tentatively determined a deficiency in federal estate taxes of $286,185.29, as shown by a letter mailed to plaintiffs under date of March 16, 1948, a copy of which is set forth as Exhibit A in the Transcript of Record herein (pages 18–28) and made a part hereof. Thereafter, a 90-day audit letter dated August 12, 1948, was issued, a copy of which is set forth as Exhibit B in the Transcript of Record herein (pages 29–35) and made a part hereof. Following a number of conferences attended by representatives of the Plaintiffs and the Commissioner of Internal Revenue and an offer of settlement made by the Plaintiffs, certain adjustments were made which resulted in a net deficiency of $135,602.74 in lieu of the deficiency of $286,185.29 as shown by said 90-day audit letter, Exhibit B above.

"6. The deficiency of $135,602.74, plus interest thereon in the sum of $24,988.06, a total of $160,590.80, was paid on November 1, 1948, to Collector of Internal Revenue John T. Jarecki. Subsequently, a portion of this deficiency in the amount of $2,351.44, plus interest, was refunded to Plaintiffs for reasons not here material.

"7. On October 24, 1950, the Plaintiffs filed claim for a refund of $100,000.00. The claim for refund was rejected by the Commissioner on April 3, 1951, and the Plaintiffs were so advised by letter of that date. A copy of the claim for refund, together with the Commissioner's rejection letter, are set forth as Exhibits E and E–a in the Transcript of Record herein (pages 45–49) and are made a part hereof.

\*    \*    \*    \*    \*    \*

"9. The procedural issue heretofore submitted to the Court for decision, namely, the question of whether or not the settlement agreement executed by the parties constituted a good defense to this action and thus a bar to further proceedings herein (as contended by the Defendant in its first and second defenses), has been resolved in favor of the Plaintiffs by the decision of the Court of Appeals for the Seventh Circuit in Bennett v. United States, 231 F.2d 465. Consequently, there is remaining for decision now the merits of the Commissioner's determination and/or any other issue which either party deems applicable or proper.

"10. Under date of October 26, 1938, the decedent, Ben Alexander, created an irrevocable trust known as the Josephine F. Alexander Trust, the Trustees being Josephine F. Alexander, George L. Ruder and Paul W. Hoeper, a photostatic copy of which trust agreement is attached hereto as Exhibit D and made a part hereof. At or about the same time the decedent transferred to said trust two policies of life insurance on his life, Northwestern Mutual Life Insurance Company policy No. 2896419 in the face amount of $200,000.00 and the Canada Life Insurance Company policy No. 677836 in the face amount of $25,000.00, and in both cases the Trustees of the

Josephine F. Alexander Trust were designated as the beneficiaries. Photostatic copies of said insurance policies are attached hereto and made a part hereof as Exhibits E and F, respectively. At or about the same time the decedent transferred to said trust certain securities. At the date of the decedent's death, July 6, 1944, the aggregate proceeds of said insurance policies amounted to $226,698.00 and the value of the securities transferred to said trust amounted to $28,995.00, or a total of $255,693.00. The net deficiency in federal estate taxes in the amount of $135,602.74 paid by the Plaintiffs, as set forth in paragraph 6 above, resulted in part from the inclusion in the decedent's gross estate of the foregoing assets constituting the corpus of the Josephine F. Alexander Trust. From and after October 26, 1938, all premiums on the two life insurance policies referred to above were paid by the Trustees of the Josephine F. Alexander Trust out of assets of said trust so transferred to it by the decedent as above set out in the total amount of $32,391.25.

"11. At the date of the decedent's death, the decedent had not retained a reversionary interest in the Josephine F. Alexander Trust.

"12. The property transferred by the decedent to the Josephine F. Alexander Trust was not transferred in contemplation of his death.

"13. The estate of Ben Alexander has incurred and will incur additional attorneys' fees and other expenses in connection with the filing and prosecution of said claim for refund and this proceeding, which said additional fees and expenses are proper deductions from the decedent's gross estate for federal estate tax purposes under Section 812 of the Internal Revenue Code of 1939, as amended, [26 U.S.C.A. § 812], and which were specifically mentioned and included in said claim for refund. It is agreed, subject to the Court's approval, that this question shall remain in abeyance pending the decision of the Court on the question of the inclusion in the decedent's gross estate of all or any part of the assets of the Josephine F. Alexander Trust. After that point has been decided, Plaintiffs will submit proof in respect of such additional expenses and the amount thereof to the Defendant and if the parties cannot agree on the proper amount to be allowed as a deduction in the determination of the decedent's net estate subject to federal estate taxes, the Court retains jurisdiction to resolve such differences prior to the entry of final judgment herein."

Enclosed with the letter of March 16, 1948, from the Internal Revenue Agent to the plaintiffs (and which is referred to in paragraph 5 of the above quoted Stipulation) was a report of examination which, under the headings "G—Transfers" and "Additional Items", listed items (a) to (g), both inclusive. Items (a) and (b) thereof each related to proceeds received from the Northwestern and Canada insurance policies, respectively, and each of items (c) to (g) thereof related to a security. Said report continued:

"The value of the proceeds received from the two life insurance policies, noted above, as items (a) and (b) which were placed in trust by the decedent under an agreement dated Oct. 26, 1938, is included in the gross estate under section 811 (g) of the Internal Revenue Code [26 U.S.C.A. § 811(g)], since the two policies were taken out by the decedent upon his own life, and all premiums, thereon, were paid indirectly by him.

"The value of all the securities which were in the said trust, dated Oct. 26, 1938, shown above as items (c) through (g) is included in the gross estate under section 811(c) of the Internal Revenue Code as a transfer under which the decedent

retained for his life the right to the income from this property."

Enclosed with the ninety-day audit letter dated August 12, 1948 (and which is also referred to in said paragraph 5 of the Stipulation) was a Statement which, under the headings "Transfers" and "New—not returned", listed items (a) and (b), each relating to proceeds from the Northwestern and Canada life insurance policies, respectively, and items (c) to (f), each of which related to a security. The statement continued:

"It is determined that the portion of the proceeds of The Northwestern Mutual Life Insurance policy number 2,896,419 and The Canada Life Insurance Company policy number 677,836, both issued on the life of the decedent, purchased with premiums paid by the decedent after January 10, 1941, are includible in the decedent's gross estate under section 811(g) (2) (A) of the Internal Revenue Code.

"It is further determined that the entire proceeds of said life insurance policies, which said policies were transferred to that certain trust, known as the Josephine F. Alexander Trust, created by the decedent on October 26, 1938, are includible in the decedent's gross estate as transfers in contemplation of, or intended to take effect at or after death, within the meaning of Section 811(c) of the Internal Revenue Code.

"It is further determined that the value of the above described items (c) (d) and (e) and (f) transferred to said trust, created October 26, 1938, by the terms of which trust, the trustees were directed to, and did pay from the principal thereof, the premiums on the foregoing life insurance policies, are includible in the decedent's gross estate as a transfer from which he retained the income for a period which did not in fact end before his death, within the meaning of section 811(c) of the Internal Revenue Code."

On October 24, 1950, the plaintiffs filed their claim for refund of $100,000, stating, among other things—

"All of the assets of the Josephine F. Alexander Trust, valued at $256,915.50, were included in the gross estate of said decedent on the alleged grounds that the transfer to the trust was intended to take effect at or after death within the meaning of section 811(c) of the Internal Revenue Code.

"The Technical Changes Act of 1949 amended section 811(c) so that transfers made prior to October 7, 1949, intended to take effect at or after death were not to be included in decedent's gross estate unless the decedent had retained a reversionary interest arising by the express terms of the instrument of transfer and the value of such reversionary interest immediately before the death of the decedent exceeded 5% of the value of such property. In transferring said insurance policies, the decedent did not retain an express reversionary interest amounting to 5% of the value of such property at the date of his death and, therefore, under the Technical Changes Act the inclusion of the proceeds of said insurance policies in decedent's gross estate as a transfer to take effect at or after death was erroneous. * * *"

In a letter dated April 3, 1951, the Commissioner disallowed the plaintiffs' claim for refund in its entirety, saying:

"In this case the estate executed a waiver which was accepted by the Technical Staff on October 21, 1948. Following the ruling in Baldwin v. Higgins, Internal Revenue Bulletin 1938–1, page 264, affirmed [2 Cir.] 100 Fed.(2d) 405 and Guggenheim v. U. S., 77 Fed.Supp. 186 [111 Ct.Cl. 165], cert. denied 335 U.S. 908 [69 S.Ct. 411, 93 L.Ed. 441], refund is barred unless saved by section 7(c) of Public Law 378. The relief afforded by that section is only available with respect to certain transfers

rendered non-taxable by virtue of subsections (a) and (b) of Public Law 378. Refund is not available to the extent that the property involved was taxed as transferred in contemplation of death or under sections 811(c) (1)(B) or (g) (2) (A) of the Code.

"Approximately one-half of the premiums paid on the insurance in the trust were paid directly or indirectly by the decedent after January 10, 1941. To that extent, the insurance is clearly includible in decedent's estate under section 811(g) (2) (A). * * *"

Section 811 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 811, reads, in pertinent part:

"§ 811. Gross Estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, whereever situated, except real property situated outside of the United States—

* * * * * *

"(c) (As amended by Section 7 (a) of the Technical Changes Act of 1949.)

"Transfers in contemplation of, or taking effect at, death.—

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death, * * *

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of,

or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death.

* * * * * *

"(2) Transfers taking effect at death—transfers prior to October 8, 1949. An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. * * *"

Before it was amended by section 7(a) of the Technical Changes Act of 1949, section 811 read, in pertinent part, as follows:

"Sec. 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * *

"(c) *Transfers in contemplation of, or taking effect at death.*—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of[1] or intended to take effect in possession or enjoyment at or after his death, [2] or

---

1. Corresponding to Section 811(c) (1) (A) as amended by the Technical Changes Act.

2. Corresponding to Section 811(c) (1) (C) as amended by the Technical Changes Act.

of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom;[3] except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; * * *."

Now, to get to the heart of the matter. What is before the court for decision?

In their first brief filed herein, plaintiffs set up their contentions as follows:

"1. Plaintiffs contend that no portion of the corpus of the Josephine F. Alexander Trust was properly included in the gross estate of Ben Alexander, deceased, under Section 811(c).

"2. Plaintiffs contend that the insurance included in the corpus of the Josephine F. Alexander Trust was not includible in the gross estate of Ben Alexander, Deceased, under Section 811(g)."

Plaintiffs' contentions, as thus stated, cover more territory than did either their claim for refund or their complaint—neither of which questioned the correctness of that determination of the Commissioner which included assets of the estate on the basis of Section 811(g).

Plaintiffs' claim for refund states that

"All of the assets of the Trust * * * were included in the gross estate * * * on the alleged grounds that the transfer to the trust was intended to take effect at or after death within the meaning of Section 811(c) * * *", and paragraph 5 of their complaint reads, in part: "In connection with the audit of said federal estate tax return * * * the defendant erroneously included in the decedent's gross estate * * * the sum of $256,-915.50, representing the value of the assets of the Josephine F. Alexander Trust dated October 26, 1938, on the alleged grounds that the transfer to the Trust was intended to take effect at or after death within the meaning of Section 811 (c) * * *."

■ In both said claim for refund and in said complaint, plaintiffs base their claim for relief on the provisions of the Technical Changes Act of 1949 which amended Section 811(c). Section 7(c) of that Act permits claims for refund to be filed prior to October 25, 1949, which would otherwise be barred by the operation of any law or rule of law that existed prior to the enactment of that Act.

The relief afforded by the Technical Changes Act, however, is available only where the taxes for which refund is sought were imposed under Section 811 (c).

It therefore appears that there is properly before the court, for decision, only the correctness of the Commissioner's determinations which included, on the basis of Section 811(c), the value of trust property in the gross estate.

■ Proceeding to a consideration of each of the two determinations of the Commissioner (as set forth in aforesaid ninety-day audit letter) which included trust property in decedent's gross estate on the basis of Section 811(c):

*As to the Commissioner's determination that "the entire proceeds of said life insurance policies * * are includible in the decedent's gross, estate as transfers in contemplation*

---

3. Corresponding to Section 811(c) (1) (B) as amended by the Technical Changes Act.

*of, or intended to take effect at or after death, within the meaning of Section 811(c) of the Internal Revenue Code."*

Since the parties hereto have stipulated (para. 12) that "The property transferred by the decedent to the Josephine F. Alexander Trust was not transferred in contemplation of his death," we will consider only that part of the Commissioner's determination which included, pursuant to Section 811(c), the entire proceeds of the life insurance policies in the gross estate *as transfers intended to take effect at or after death.*

"Transfers [which are] intended to take effect in possession or enjoyment at or after death  *  *  *  are included in the gross estate on the theory that such a transfer does not become complete and effective until death  *  *  *." Commissioner of Internal Revenue v. Gidwitz Estate, 7 Cir., 196 F.2d 813, 818.

In the instant case the transfer by the decedent of the insurance policies was complete and effective. The decedent reserved no rights or incidents of ownership. He completely divested himself of all rights and interest in the policies. He retained no economic benefit thereunder. As settlor, the decedent reserved no power to change the provisions of the trust so that he could ever obtain any interest or benefit in either the corpus of the estate or the income therefrom. The parties have stipulated (para. 11) that at the date of the decedent's death decedent had not retained a reversionary interest in the Trust and (para. 10) that the trust was irrevocable.

Sub-paragraph 6 of Article V of the Trust Agreement provides that the Trustees—

"shall have all powers, options, rights and privileges given by the terms of any life insurance  *  *  * policies held in the Trust Estate, including (by way of illustration but not of limitation of the foregoing general statement) the right to change the beneficiary, make policy loans, surrender policies for cash, convert to paid-up or extended term insurance, collect the proceeds, designate any mode of settlement of the proceeds that the insurance company may allow and apply policy dividends.  *  *  *"

Although another section of the Internal Revenue Code was under consideration in Kohl v. United States, 7 Cir., 226 F.2d 381, some of the language of the court in that case is applicable to this case:

"In the present case no transfer, no transmission of property rights in and to the policies in question, occurred upon the decedent's death. After the father, in his lifetime, made a completed gift of the insurance  *  *  *  no interest remained in him. From that time, the assignees owned the policies and all rights in and to the same. 'The assignees were in truth, not by any fiction, the absolute owners of the  *  *  *  policy'. Bohnen v. Harrison, 7 Cir., 199 F.2d 492, at page 494. They might have sold the policies and transferred to others any and all proceeds thereof. They might have surrendered them and received their cash value from the insurer. The assignor could exercise no control over, no rights in these pieces of property, which he had completely transferred.  *  *  *  This is not one of those cases where a tax is constitutionally imposed because the assignor has retained incidents of ownership in the property transferred or possibilities of reversion. Only when the gift is not complete until the assignor's death, can the property transferred be properly included in the decedent's estate.  *  *  *

"  *  *  *  It is the transfer which is taxed and that alone and  *  *  * that act was completed during the decedent's lifetime." (Page 384).

This court is of the view that the proceeds of the life insurance policies are not properly includible and should not have been included by the Commissioner

in decedent's gross estate, pursuant to Section 811(c), as transfers intended to take effect at or after death.

Section 811(c) (2), as amended by the Technical Changes Act of 1949, provides that—

"An interest in property of which the decedent made a transfer on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. * * *"

Therefore, even assuming, *arguendo,* that decedent's transfer of the policies was intended to take effect in possession or enjoyment at or after his death, we conclude that since decedent retained no reversionary interest whatsoever, plaintiffs could claim the relief afforded by Section 7 of the Technical Changes Act of 1949 and that the proceeds of the policies could not properly be included in decedent's gross estate under Section 811 (c).

*As to the Commissioner's determination that the value of the securities transferred to the trust "by the terms of which trust the trustees were directed to, and did pay from the principal thereof, the premiums on the foregoing life insurance policies, are includible in the decedent's gross estate as a transfer from which he retained the income for a period which did not in fact end before his death, within the meaning of Section 811(c) of the Internal Revenue Code."*

Section 811(c) (1) (B) reads in part: "* * * under which he has retained for his life or for any period not ascertainable without reference to

his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property * *."

The government contends that the income from the securities which were transferred to the trust "was enjoyed by the decedent until the date of his death for the reason that it was used for the purpose of carrying out the terms of the trust by the payment of the premiums on the insurance policies, and he therefore retained the use and benefit of this income for the purpose for which it was created until his death. In other words, by the transfer in question the decedent retained for his life the income on these assets."

This court cannot agree with that contention of the Government. The decedent's transfer of the securities to the trust was as effective and complete as was his transfer of the insurance policies. He retained no rights or incidents of ownership and retained no contingent interest in the securities. He retained no life estate in the income therefrom. He retained no reversionary interest whatsoever, either in the securities or in the trust, which was irrevocable, and he completely divested himself of all title and interest in the securities, reserving no power to change the provisions of the trust so that he could ever obtain any interest or economic benefit in either the corpus of the estate or the income therefrom.

Moreover, the income from the securities placed in the trust was not used to pay the premiums on the insurance. By the express terms of the trust the trustees were to "pay the premiums out of the principal of the Trust Estate or may borrow the funds to pay such premiums and pledge or mortgage all or any part of the Trust Estate as security." The Trust Agreement directed that the income be paid to the beneficiary.

This court is of the view, and so finds, that the value of the securities transferred by decedent to the trust are not properly includible and should not have been included by the Commissioner in decedent's gross estate "as a transfer

from which he retained the income for a period which did not in fact end before his death, within the meaning of Section 811(c) of the Internal Revenue Code."

■ The aforesaid ninety-day audit letter set forth one further determination relative to the inclusion of trust property in decedent's gross estate, namely—

*The Commissioner's determination that the portion of the proceeds of the two life insurance policies issued on the life of the decedent, "purchased with premiums paid by the decedent after January 10, 1941, are includible in the decedent's gross estate under Section 811 (g) (2) (A) of the Internal Revenue Code."*

Although, as hereinbefore stated, this court is of the view that the Commissioner's above described determination which included certain trust property under Section 811(g) (2) (A) is not properly before this court for decision, it appears to this court that the Commissioner was correct in so including under that section the portion (and only the portion) of the proceeds of the two life insurance policies purchased with premiums paid by the decedent after January 10, 1941.

Section 811(g), in pertinent part, reads:

"§ 811. *Gross estate.*

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"(g) *Proceeds of life insurance.* (As amended by Section 404(a) of the Revenue Act of 1942)

"(1) *Receivable by the executor.* To the extent of the amount receivable by the executor as insurance under policies upon the life of the decedent.

"(2) *Receivable by other beneficiaries.* To the extent of the amount receivable by all other beneficiaries as insurance under policies upon the life of the decedent (A) purchased with premiums, or other consideration, paid directly or indirectly by the decedent, in proportion that the amount so paid by the decedent bears to the total premiums paid for the insurance, or (B) with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. For the purposes of clause (A) of this paragraph, if the decedent transferred, by assignment or otherwise, a policy of insurance, the amount paid directly or indirectly by the decedent shall be reduced by an amount which bears the same ratio to the amount paid directly or indirectly by the decedent as the consideration in money or money's worth received by the decedent for the transfer bears to the value of the policy at the time of the transfer. For the purposes of clause (B) of this paragraph, the term 'incident of ownership' does not include a reversionary interest."

Paragraph (c) of Section 404 of the Revenue Act of 1942 which amended Section 811(g), reads:

"(c) *Decedents to Which Amendments Applicable.* The amendments made by subsection (a) shall be applicable only to estates of decedents dying after the date of the enactment of this Act; but in determining the proportion of the premiums or other consideration paid directly or indirectly by the decedent (but not the total premiums paid) the amount so paid by the decedent on or before January 10, 1941, shall be excluded if at no time after such date the decedent possessed an incident of ownership in the policy."

The Trust Agreement (para. 6) directed the Trustees to pay insurance premiums out of the principal of the trust

estate. The decedent, as settlor or trustor, furnished the principal of that trust estate. He supplied the funds with which the premiums on the insurance policies were paid. The conclusion is inescapable that he paid those premiums indirectly.

The Commissioner's determination to include only the portion of the proceeds of the policies purchased with premiums paid after January 10, 1941, indicates that he correctly determined that the decedent had possessed no incident of ownership in the policies at any time after January 10, 1941, and further that he correctly gave plaintiffs the benefit of amendatory Section 404(c) of the Revenue Act of 1942.

Plaintiffs are entitled to recover to the extent in this memorandum indicated.